Argued November 17, affirmed December 29, 1975, reconsideration
denied February 4, petition for review denied
February 24, 1976 for late filing

STATE OF OREGON, *Respondent, v.* LARRY
DENNIS JONES (No. 74 5344, CA 4740),
*Appellant.*
543 P2d 1103

*Robert J. McCrea,* Eugene, argued the cause for appellant. With him on the brief were Morrow & McCrea, P.C.

*John W. Burgess,* Assistant Attorney General, Salem, argued the cause for respondent. With him

on the brief were Lee Johnson, Attorney General, and W. Michael Gillette, Solicitor General, Salem.

Before SCHWAB, Chief Judge, and LANGTRY and FOLEY, Judges.

FOLEY, J.

Defendant was convicted of unlawful possession of dangerous drugs and received a four-year sentence. His sole assignment of error is the denial of his motion to suppress evidence.

Responding to a radio call of a burglary at approximately 2 a.m., a police officer drove to the vicinity of the burglary in a residential area in the southwest section of Eugene. The burglar reportedly left his victim's house on foot. The officer stationed himself at a street intersection about 500-600 yards from the burglary scene. The officer observed no vehicular traffic for approximately 10 minutes after he parked at the intersection. The first car which approached the intersection was operated by defendant. Defendant was traveling slowly through a series of turns and was heading in the direction of the burglary scene.

The officer was looking for anyone who might be tied in with the burglary. He stopped defendant's car because:

"* * * I thought maybe he might be involved in the burglary, but I had no reason to believe that he did pull it, but that he might have."

Defendant had no identification with him. He told the officer he had left his wallet at the residence he had just left. The officer noted expired license plates on the vehicle.

The officer testified:

"* * * I was going to transport him from the

area to where he allegedly left his wallet. He was going to be in the back seat of my patrol car. For my own safety, I told him I was going to pat him down before I put him in there. So, I started a pat-down search. '

"Q. Tell us how you did that and what happened.

"A. He was standing with his left side toward me. So, I started down his jacket, and when ·I got to his jacket coat pocket, the outer one, such as the lower one of my coat here, I felt a hard object in that pocket.

"Q. And did you investigate that hard object?

"A. Yes. I asked him what it was, and he immediately stuck his hand into his pocket, and I immediately stuck my hand in there to make sure he didn't pull out a weapon.

"Q. What happened when you put your hand in his pocket?

"A. I· pulled his hand back out. In the process, he dropped two white pills to the ground.

"Q. Did you see them fall to the ground?

"A. Yes, I did."

The pills which fell to the ground appeared to the officer to be amphetamines. Further search then developed a baggie with more amphetamines and "* * * hypodermic needles, syringe, tweezers, a tie string * * * and paraphernalia used for shooting drugs to inject into your vein." Defendant was then arrested for criminal activity in drugs. Defendant was not, in fact, connected with the burglary. Defendant contends that the officer had no reasonable suspicion that the car or its occupant had a connection with criminal activity.

ORS 131.615(1) provides:

"A peace officer who reasonably suspects a

person has committed a crime may stop the person and, after informing the person that he is a peace officer, make a reasonable inquiry."

ORS 131.605(4) provides:

" 'Reasonably suspects' means that a police officer holds a belief that is reasonable under the totality of the circumstances existing at the time and place he acts * * *."

The trial court found in denying the motion to suppress:

"I think under all the circumstances which apparently were known to the officer at the time of the making of the stop that he was fully justified in stopping any and all motor vehicles or any and all persons on foot that he had observed in that area at that time * * *. Having been justified in making the stop * * * there's no question of the legality of what occurred after that. * * *"

We agree with the trial court's analysis that the totality of the circumstances authorized the stop and frisk and the resultant seizure of the drugs. *Terry v. Ohio,* 392 US 1, 88 S Ct 1868, 20 L Ed 2d 889 (1968); *State v. Smith,* 10 Or App 557, 500 P2d 1217 (1972).

Affirmed.