Argued October 20, remanded for resentencing November 22, 1976,
reconsideration denied January 5, petition for review denied
March 1, 1977

## STATE OF OREGON, *Respondent,*
### *v.*
## MELVIN DAVID DENNY, *Appellant.*
### (No. 46730, CA 6155)

556 P2d 719

*Gary L. Hooper,* Deputy Public Defender, Salem,

argued the cause for appellant. With him on the brief was Gary D. Babcock. Public Defender, Salem.

*Thomas H. Denney,* Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Lee Johnson, Attorney General, and W. Michael Gillette, Solicitor General, Salem.

Before Schwab, Chief Judge, and Lee and Tanzer, Judges.

TANZER, J.

## TANZER, J.

Defendant was convicted of robbery in the first degree and, pursuant to ORS 166.230, given an enhanced penalty for committing a felony while armed with a concealable weapon, and appeals. He first assigns as error the denial of his motion to suppress evidence.

At 1:45 a.m. on November 21, 1975, the defendant and another[1] robbed a Circle K market in Albany at gunpoint and departed. The clerk immediately called the Albany Police Department and officers arrived at the scene before she had hung up the telephone. Policemen were ordered to deploy themselves at several intersections along the most likely routes of flight from the grocery store.

At 1:48 a.m., Officer Zucker was directed to proceed to the intersection of Queen and Pacific Boulevard, both of which are commonly-used routes leading from the Circle K market. He was told that the robbery had just occurred and that there were two suspects, one tall, one short, and that they were possibly of Spanish origin. He was also informed that they had been disguised with masks and were armed with a pistol. Officer Zucker took approximately three minutes to reach the intersection. There was no traffic at that time except that he immediately observed a 1964 Rambler approach the intersection. He saw that two men occupied the automobile and he fell in behind them. The car stopped for a red light and pulled out at a four to five mile per hour "crawl." Officer Zucker observed that one occupant was tall and one short. The short one turned for a "sneak peek" at the officer's car. The overly cautious manner of driving was more exaggerated than that of motorists who normally tend to drive more cautiously when they notice that they are within police observation.

Based upon those observations, Officer Zucker

---

[1] *See State v. Chiago*, 26 Or App 263, 552 P2d 1352, *rev den* (1976).

ordered the automobile to stop. The driver got out immediately and the officer then noticed that he had a Spanish or Mexican appearance.

The store clerk was brought to the scene five or ten minutes later and she identified the suspects as the robbers by their builds, by the clothing they were wearing, and by the presence of an orange ski cap which was visible in the automobile. The suspects were then arrested. The car was searched. Weapons and distinctive clothing were seized in plain sight and currency was found under the floor mat and it is this evidence which defendant moved to suppress.

The issue is whether the original stop of the automobile was based on sufficient police knowledge to justify a reasonable suspicion that the defendant was connected with a crime. The standard for such a suspicion was recently analyzed in *State v. Valdez,* 27 Or App 329, 556 P2d 132 (1976).

The quantum of knowledge constituting cause in this case is minimal. The police knew that a grocery store had been robbed some six minutes before by two men, one short, one tall, of probable Spanish or Mexican origin, and that a car containing two such men was proceeding alone in the sparse traffic of the early morning hours down a major street leading away from the grocery store within six minutes' travelling time from the grocery store.

If this were a general inquiry into the possibility that a crime might have been committed, then the observations of the defendant and his companion would be insufficient to justify a stop. *State v. Johnson, Wesson,* 26 Or App 599, 554 P2d 194 (1976). Where, however, the police know that a crime of serious gravity has just been committed and that quick tactical reaction is necessary to apprehend the offender, then factors which would be of marginal significance in a general investigation take on heightened importance. The question is no longer whether there is reasonable suspicion that a crime has been

committed, but rather whether there is a reasonable possibility that the person under observation is connected with the crime which the police believe to have been committed. One writer has said of such situations:

"* * * In the more usual case, however, the police are called to the scene of a just-completed crime and are able to obtain only a general description of the offender. Experience has shown that when the victim or witness cannot name the offender his apprehension is unlikely unless he is immediately found in the area, so the police response in these cases is to broadcast the general description and bring as many officers as possible into the area to search for a person or persons fitting the description. However, courts have generally taken the position—and this is the most striking illustration of the 'more probable than not' test—that an arrest may not be made upon a general description when the circumstances, including the lapse of time and size of the area being searched, are such that more than one person would likely fit that description.

"In such a situation, as even many who oppose stop and frisk in other contexts would likely admit, the police must have some authority to freeze the situation. If it is inherent in the circumstances that no one person can be singled out as the probable offender, then it should be permissible to detain briefly every person in the area who fits the general description. Clearly, only one can be guilty, but as to each of the suspects there exists a substantial possibility of guilt. Common sense, of course, suggests that whether the possibility is substantial will depend upon the size of the area in which the offender might be found (which in turn depends upon how recently the crime was committed and whether the offender fled on foot or in a car), the number of persons now in the area, and the extent to which the general description affords some basis for selection. If, for example, a robbery occurred some fifteen minutes earlier and the only report is that the robber wore brown shoes, and there are several hundred people on the streets in the area, no one would seriously suggest that all those with brown shoes should be stopped." (footnotes omitted). LaFave, *"Street Encounters" and the Constitution,* 67 Mich L Rev 40, 79-81 (1968).

We need not go so far as the comment suggests to uphold the stop where, as here, there was reason to suspect that the defendant and his companion could be the persons involved in the immediately recent robbery. *State v. Jones,* 23 Or App 706, 543 P2d 1103 (1975), *rev den* (1976); *State v. Miller,* 2 Or App 87, 465 P2d 894, *rev den* (1970), *cert den* 406 US 974 (1972).

Defendant also assigns as error his enhanced three-year sentence for committing a crime while armed with a concealable, unlicensed firearm, in addition to his seven-year sentence for armed robbery. The Attorney General concedes that this issue was decided favorably to the defendant in *State v. Howe,* 26 Or App 743, 554 P2d 605 (1976), decided after the judgment in this case. He concedes that our opinion has "some logic," but urges that it is nevertheless in error because the enhancing statute, ORS 166.230, applies only to unlicensed weapons whereas absence of a license is not an element of the robbery statute. He also claims that *State v. Humphrey,* 253 Or 183, 425 P2d 755 (1969), involving a cruel and unusual punishment challenge, is to the contrary.

While his argument also has some logic, we believe our construction in *Howe* of the Criminal Code is more in harmony with the intent of the revision, particularly of the portion restructuring sentences for criminal offenses, ORS 161.505 to 161.685. Therefore we adhere to *Howe* and the sentence must be vacated.

Remanded for resentencing.