Argued November 16, 1977, affirmed May 8, reconsideration denied
June 14, petition for review denied June 20, 1978

STATE OF OREGON, *Respondent,*
*v.*
TIMOTHY VERNER BARTOSZ, *Appellant.*
(No. 99013, CA 8781)

STATE OF OREGON, *Respondent,*
*v.*
LARRY WAYNE PILGRIM, *Appellant.*
(No. 99019, CA 8779)

STATE OF OREGON, *Respondent,*
*v.*
DANIEL JAMES ROBERTS, wtn
DAVID JAMES ROBERTS, *Appellant.*
(No. 99020, CA 8780)
(Cases consolidated)
578 P2d 426

Robert C. Cannon, Deputy Public Defender, Salem, argued the cause for appellants. With him on the brief was Gary D. Babcock, Public Defender, Salem.

Melinda L. Bruce, Assistant Attorney General, Salem, argued the cause for respondent. With her on the brief was James A. Redden, Attorney General, Salem.

Before Schwab, Chief Judge, and Lee and Joseph, Judges.

LEE, J.

**LEE, J.**

This is a consolidated appeal by three defendants from their separate convictions of burglary in the first degree, ORS 164.225. Prior to trial of these companion cases, defendants individually and jointly filed motions to suppress evidence discovered during the stop of the motor vehicle in which they were traveling. The motions were denied. The sole issue is whether the police officer who stopped the automobile had grounds for a reasonable suspicion that the persons within the vehicle were involved in criminal activity.

The evidence was that at "approximately 2:10 to 2:15 a.m." a house in Sublimity, Oregon, was burglarized. A sheriff's deputy investigated the burglary and reported that a car had been heard, but not seen, traveling in a direction toward Salem. Officer Cearley received this information by radio at 2:29 a.m. Five minutes later, while driving west on a street in the city of Stayton, which is approximately three miles from Sublimity, Cearley observed a car traveling east toward him. There were no other cars in the area and Cearley knew from experience that it was unusual to see traffic coming into the city at that time of the morning so he ran a registration check on the car and learned that the residence of the owner was on the outskirts of Stayton. When Cearley turned around to follow the car, he observed that it turned south. This was a digression from the most direct route to the registered owner's residence. As Cearley approached the intersection where the car had turned, he saw that the car was stopped in the middle of an intersection where there was no stop sign. When Cearley started to follow the car, it accelerated and turned so that it was traveling east again. At this point, Cearley decided that "something wasn't normal."

Instead of following the car, Cearley continued east hoping to meet the car if it turned north at the next intersection. The car did turn north and when Cearley's marked patrol car approached defendants' car he

noticed it accelerated, causing the wheels to throw gravel, before turning east again. Cearley turned on his overhead lights and stopped defendants' car. The three defendants were in the car and the driver consented to Cearley's search of the trunk. Two rifles were found in the trunk which were later identified as belonging to the victim of the burglary.

Defendants contend that the stolen guns discovered in the trunk of the car in which they were riding "were the fruits of an illegal stop" in violation of ORS 131.615, because the observations of the officer and the radio report of the burglary failed to provide a reasonable suspicion that defendants' car was involved in criminal activity.

An officer may stop and interrogate a person if he "reasonably suspects" that the person has committed a crime. ORS 131.615.[1] That term is defined by ORS 131.605(4) as follows:

> " 'Reasonably suspects' means that a peace officer holds a belief that is reasonable under the *totality of the circumstances* existing at the time and place he acts as authorized in ORS 131.605 to 131.625." (Emphasis supplied.)

ORS 131.605(4) was part of section 30 of the Proposed Oregon Criminal Procedure Code of 1972, compiled by the Criminal Law Revision Commission (Commission), which was enacted by the legislature in 1973.[2] The Commentary relevant to this particular section is

---

[1] ORS 131.615 provides:

"(1) A peace officer who *reasonably suspects* that a person has committed a crime may stop the person and, after informing the person that he is a peace officer, make a reasonable inquiry.

"(2) The detention and inquiry shall be conducted in the vicinity of the stop and for no longer than a reasonable time.

"(3) The inquiry shall be considered reasonable only if limited to the immediate circumstances that aroused the officer's suspicion." (Emphasis supplied.)

[2] Oregon Laws 1973, ch 836, § 31.

found at page 25 of the Commission's report and in pertinent part is as follows:

" 'Reasonably suspects' is defined initially to show that the suspicious belief must be based on a totality of the circumstances. This requirement was stated in similar terms in *Terry* [v. State of Ohio, 392 US 1, 88 S Ct 1868, 20 L Ed 2d 889 (1968)]. There must be some facts or circumstances that distinguish the conduct of the individual stopped from that of other individuals who are not stopped:

" 'In justifying the particular intrusion the police officer must be able to point to specific and articulable facts which, taken together with rational inferences from these facts, reasonably warrant that intrusion * * *.' 392 US at 21."

The "reasonably suspects" provision of ORS 131.615 was also considered by the Commission in the same commentary at page 26 as follows:

"In *State v. Cloman,* 254 Or 1, 456 P2d 67 (1969), the Oregon Supreme Court partially explained what reasonable suspicion was in relation to the stopping of a vehicle:

" 'This "reasonable suspicion" we deem to be of less quantum than probable cause to arrest.' 254 Or at 6.
"* * * * *.

"Therefore, when an officer observes unusual conduct which leads him reasonably to conclude in light of his experience that criminal activity is afoot and when he is able to point to specific and articulable facts which give rise to the inference that criminal activity is afoot, the officer has 'reasonable suspicion' and hence can stop the individual for investigation."

In *State v. Carter/Dawson,* 34 Or App 21, 30, 578 P2d 790 (1978), we held that 'stops are to be tested solely by whether the facts perceived by the stopping officer constitute *objective cause* for the stop." These facts are then examined objectively to determine whether a reasonable police officer would believe that the vehicle and its occupants were involved in criminal activity. *State v. Valdez,* 277 Or 621, 626, 561 P2d 1006 (1977).

■ Here, Officer Cearley had received a police dispatch that a burglary had been committed in the last half hour within approximately three miles of where he observed defendants' car. Thus, there was an objective indication that criminal activity was afoot. Five minutes after receiving the dispatch, Cearley observed a vehicle occupied by three males turn east entering Stayton. Traffic at that time of the morning would more likely be headed away from, rather than toward, Stayton. After checking the vehicle's registration, Cearley observed that the car was driven as follows: Initially it was headed east, it then turned south when Cearley began to follow it, then it stopped for no apparent reason in the middle of a quiet residential intersection, then it turned east again, then north, then east. As the officer's car approached, the defendants' car made a series of quick turns, one of which was made with enough acceleration to cause the wheels to throw gravel. The car was not on a direct route to the owner's residence. The route taken by the car was circuitous and apparently evasive.

The totality of these circumstances provided more than ample justification for a reasonable police officer to believe that the vehicle which he observed was involved in criminal activity.

Affirmed.