Argued and submitted September 26, reversed and
remanded for new trial December 10, 1979

STATE OF OREGON,
*Respondent,*
*v.*
MICHAEL L. PONCE,
aka Willie Frank Gravette,
*Appellant.*

(No. C 78-08-12637, CA 13139)

603 P2d 1243

Ernest E. Estes, Deputy Public Defender, Salem, argued the cause for appellant. With him on the brief was Gary D. Babcock, Public Defender.

Virginia L. Linder, Certified Law Student, Salem, argued the cause for respondent. With her on the brief were James A. Redden, Attorney General, and Walter L. Barrie, Solicitor General, Salem.

Before Buttler, Presiding Judge, and Gillette and Roberts, Judges.

ROBERTS, J.

**ROBERTS, J.**

Defendant appeals from his convictions for Kidnapping in the First Degree, Robbery in the First Degree, Attempted Sodomy in the First Degree and Assault in the Second Degree. He cites as error the denial by the trial court of his motion to suppress evidence which he contends was obtained as the result of an illegal stop.

Testimony presented at the suppression hearing revealed that on the date in question an Oregon State Police officer received a radio message describing an assault upon a hitchhiker which was reported to have "just occurred" in the Tigard area, approximately ten miles north of the officer's location in Wilsonville. The dispatcher reported that three suspects were traveling south on Interstate 5 in a black vehicle, possibly an Oldsmobile. The officer headed south on Interstate 5 at approximately 100 miles an hour and encountered a black vehicle with five occupants just south of Woodburn.[1] It was traveling in the right lane at approximately 50 miles per hour, a speed which the officer noted to be unusual. This was the first black vehicle he had encountered.

The officer radioed that he was following what was possibly the reported vehicle. He stopped the vehicle when it left the freeway at Salem. The legality of this stop was the only issue presented at the suppression hearing.

An officer may stop and interrogate a person if he "reasonably suspects" that the person has committed a crime. ORS 131.615.[2] The quoted phrase is defined as follows by ORS 131.605(4):

---

[1] We take judicial notice of the fact that it is approximately 26 miles from the Tigard exit to the location where the officer spotted the car.

[2] ORS 131.615 provides:

"(1)   A peace officer who reasonably suspects that a person has committed a crime may stop the person and, after informing the person that he is a peace officer, make a reasonable inquiry.

"(4) 'Reasonably suspects' means that a peace officer holds a belief that is reasonable under the totality of the circumstances existing at the time and place he acts as authorized in ORS 131.605 to 131.625."

In determining whether the stop was justified, we look to see whether the facts perceived by the officer constituted *objective cause* for the stop. *State v. Valdez,* 277 Or 621, 561 P2d 1006 (1977); *State v. Robertson,* 42 Or App 471, 600 P2d 935 (1979). The officer must be able to point to specific and articulable facts indicating that there is some kind of criminal activity afoot and that the persons stopped are involved. *State v. Valdez, supra,* 277 Or at 626.

In this case, the police dispatcher advised the officer that a crime had occurred. Therefore, he had objective reason to know that crime was afoot. The only question before us, then, is whether the officer had sufficient facts to link the vehicle stopped to the reported crime. Where, as here, the officer knows that a crime has been committed, a stop will be justified on the basis of fewer articulable facts than those required where the officer is making a general inquiry into the possibility that a crime might have been committed. *State v. Denny,* 27 Or App 455, 556 P2d 719 (1976), *rev den* (1977); *State v. Robertson, supra.* Nonetheless, the facts before us will not support the stop.

From this record we know only that the officer followed up on a crime which had "just occurred." We do not know whether the officer knew how much time had elapsed between the commission of the crime and the officer's receipt of the radio dispatch or why he headed south at 100 miles per hour if the crime had "just occurred" 10 miles north of his position. Without this information, we cannot judge whether his encounter with a black car, apparently of a make and

"(2) The detention and inquiry shall be conducted in the vicinity of the stop and for no longer than a reasonable time.

"(3) The inquiry shall be considered reasonable only if limited to the immediate circumstances that aroused the officer's suspicion."

model different from that described, was anything more than a coincidence. Further, although the officer testified that this was the only black car which he had encountered, there was no testimony objectively justifying the fact that this car was singled out for attention. *Cf. State v. Denny, supra; State v. Robertson, supra; State v. Bartosz,* 34 Or App 123, 578 P2d 426 *rev den* (1978); and *State v. Ragsdale,* 34 Or App 549, 579 P2d 286 *rev den* (1978), all of which involved evasive or suspicious conduct by the driver or passengers of the suspect vehicle. The officer's observation that the slow speed at which defendant was traveling was unusual will not support the stop of the vehicle. Although the officer stated while testifying for the motion that "there is very rarely a soul on the freeway that's under 60 miles an hour," his observation that this otherwise legal behavior was unusual would not be enough to form a basis for believing criminal activity was afoot. "* * *[I]nstinct and experience cannot * * * form the entire basis for 'reasonable suspicion.'" *State v. Valdez, supra,* 277 Or at 628.

We note that the state might have been able to make a case for the stop had more details of time and place been included in the record. However, since the record fails to pinpoint the relevant times and gives no indication of suspicious behavior, we hold the stop to have been illegal.

Defendant also contends that pretrial identification of defendant should have been suppressed by the trial court because the identification was the fruit of the unlawful stop. Two separate motions to suppress were filed below and separate hearings were held. On the ground that the stop was unlawful, defendant moved to suppress evidence

"* * * which resulted from the stop of the vehicle in which defendant was riding. Such evidence would include the vehicle itself, a knife, a backpack, defendant's driver's license, a dog, or photographs of any of the above, and any later statements of the defendant."

[669]

Defendant's second motion to suppress was based on the Fifth and Fourteenth Amendments to the United States Constitution and contended that the out-of-court identification was unduly suggestive. That contention is not renewed on appeal; rather defendant claims here that the identification should be suppressed as the fruit of the illegal stop. That argument was not made below and we will not consider this issue for the first time on appeal. *State v. Hickman,* 273 Or 358, 540 P2d 1406 (1975).

Reversed and remanded for new trial.