Argued and submitted September 15, 1981, affirmed January 11, reconsideration denied February 25, petition for review denied April 20, 1982 (292 Or 863)

## STATE OF OREGON,
*Appellant,*

*v.*

## RAY TIM HENRY,
*Respondent.*

(No. 8004 1074t, CA A20891)

638 P2d 1167

Stephen F. Peifer, Assistant Attorney General, Salem, argued the cause for appellant. With him on the brief were Dave Frohnmayer, Attorney General, and William F. Gary, Solicitor General, Salem.

James V. B. Delapoer, Albany, argued the cause for respondent. With him on the brief were F. James Healy, and Long, Post, Delapoer & Koos, P.C., Albany.

Before Richardson, Presiding Judge, Joseph, Chief Judge, and Van Hoomissen, Judge.

RICHARDSON, P. J.

VAN HOOMISSEN, J., dissenting opinion.

## RICHARDSON, P. J.

In this criminal action for driving under the influence of intoxicants, the state appeals a pretrial order suppressing evidence. The issue is whether the police officer lawfully stopped the vehicle in which defendant was a passenger.[1] We affirm.

The facts, which are not in dispute, are taken from the court's written order:

> "At approximately 3:14 am, Wendell Jegglie, a Linn County Deputy Sheriff, was traveling eastbound on Grand Prairie Road on routine patrol. He observed a vehicle parked on Spicer Road, a roadway intersecting Grand Prairie, with its emergency flasher engaged. The deputy proceeded onto Spicer Road in a northbound direction. When the deputy approached the defendant's vehicle the emergency flashers were disengaged, the headlights turned on, and the defendant's vehicle accelerated rapidly. It is not clear to the Court when the deputy first became aware that the defendant's vehicle was parked facing north in the southbound traffic lane, but there is no reason to believe the defendant was not parked as the officer testified. There was a vehicle parked in the ditch to the left of where the defendant had been parked. This vehicle was partially illuminated by the patrol car's lights. The officer was able to see into the vehicle and did not observe occupants or individuals in the area of the vehicle. There is a school in the immediate area and a number of residences nearby.
>
> "The officer did not have any information, other than the observations he made, which is accepted in these findings. His reason for stopping the vehicle was his suspicion that a crime might have been committed. At no time did he indicate that he stopped the vehicle because of any violation of any traffic law."[2]

The court concluded that, under these facts, the police officer did not have a reasonable suspicion that defendant had committed a crime. ORS 131.615(1), 131.605(4).[3]

---

[1] The state does not contend that defendant, as a passenger in the vehicle, lacked standing to contest the validity of the stop.

[2] After stopping the vehicle, the officer concluded defendant was under the influence of intoxicating liquor and determined from statements made by defendant that he had been driving the vehicle which the officer observed in the ditch.

[3] ORS 131.615(1) states:

The state argues that the court erred in refusing to uphold the stop as a traffic infraction stop, because the officer observed defendant's vehicle parked facing north in the southbound traffic lane. ORS 487.165. The state argues: "If a traffic stop is independently and objectively justifiable for a violation committed in the officer's presence, the stop is not improper merely because the officer had other motives for the stop." It cites *State v. Tucker,* 286 Or 485, 595 P2d 1364 (1979), and *State v. Valdez,* 277 Or 621, 561 P2d 1006 (1977).

We disagree with the state's interpretation of the "objective" standard to be applied in determining whether a stop is proper. In *State v. Valdez, supra,* the officer stopped defendant's car after the defendant failed to use his turn signal, but the officer's actual motive for the stop was his suspicion of drug activity. The officer did not attempt to justify the stop as a traffic stop, and the court also ignored that basis. The court found the stop to be unreasonable, applying the objective standard which requires the officer " 'to point to specific and articulable facts which give rise to the inference that criminal activity is afoot.' " 277 Or at 626. This holding was clarified in *State v. Tucker, supra,* where the officer was suspicious of the defendant and watched him until he failed to stop at a stop sign. The officer stopped the defendant for the traffic violation, but his actual motive for the stop was to investigate the defendant's suspicious behavior. The court stated:

> "*Valdez* simply holds that when a police officer says that although he observed a traffic violation he actually made a stop for an entirely different reason, and was not concerned with enforcement of the traffic laws, the courts will take him at his word. It does not hold that when an officer sees a traffic violation, and when he stops the violator for the avowed purpose of citing for that violation,

---

"A peace officer who reasonably suspects that a person has committed a crime may stop the person and, after informing the person that he is a peace officer, make a reasonable inquiry."

ORS 131.605(4) states:

" 'Reasonably suspects' means that a peace officer holds a belief that is reasonable under the totality of the circumstances existing at the time and place he acts as authorized in ORS 131.605 to 131.625."

the court will hold the stop improper for purposes of the exclusionary rule if it concludes that the officer also had other motives for the stop." (Footnote omitted.) 286 Or at 94.

■ ■    The "objective test" applies to the facts actually relied upon by the officer making the stop. The test is not applied to the entirety of facts that the officer could have or should have observed and chose not or failed to rely upon. The state's view would allow a hindsight justification for a stop when the officer in fact acted on the basis of mere suspicion. We decline to provide the bootstrap by which the prosecution may hoist itself. The trial court properly disregarded the possible traffic infraction as the justification for the stop; the officer himself did not rely on it.

■    As the court noted, the officer's reason for stopping defendant's vehicle was his suspicion that a crime might have been committed. This justification must be analyzed under the stop and frisk statutes. ORS 131.605 to 131.625. In describing that statutory standard, the Supreme Court said:

" "* * * [W]hen he is able to point to specific and articulable facts which give rise to the inference that criminal activity is afoot, the officer has a "reasonable suspicion" and hence can stop the individual for investigation.' " *State v. Valdez, supra,* 277 Or at 626.

The state points to the following facts as a justification for the stop: the late hour, the rapid departure upon arrival of the officer, the apparently abandoned vehicle parked in the ditch, and the presence of an often-burglarized school and a number of residences in the immediate area. On these facts, the state argues, a police officer could reasonably suspect that defendant was involved in stripping the parked vehicle or had burglarized the nearby school or residences.

The facts, viewed objectively, did not support the inference that defendant may have been involved in stripping the car in the ditch. There was no evidence that that car was being stripped or that the defendant and his companion had done anything other than simply stop to look at the vehicle. As a justification for suspecting a burglary, the facts were

even weaker. There was no report that the school or nearby residences had just been burglarized, which would have allowed marginal facts to take on greater significance. *See State v. Denny,* 27 Or App 455, 556 P2d 719 (1976), *rev den* 277 Or 237 (1977); *State v. Robertson,* 42 Or App 471, 600 P2d 935 (1979). As we noted in *State v. Ponce,* 43 Or App 665, 603 P2d 1243 (1979):

> "* * * Where * * * the officer knows that a crime has been committed, a stop will be justified on the basis of fewer articulable facts than those required where the officer is making a general inquiry into the possibility that a crime might have been committed. * * *" 43 Or App at 668.

The facts of the present case did not support a reasonable suspicion that defendant had committed a crime.

*State v. Valdez, supra,* compels us to conclude that the stop was unlawful.

Affirmed.

**VAN HOOMISSEN, J.,** dissenting.

The vehicle in which defendant was riding[1] was stopped after the officer observed specific and articulable evidence which would lead a reasonable policeman to conclude that a traffic infraction had been committed by the driver of the vehicle.[2] ORS 487.165. Therefore, the stop was justified. ORS 484.350(4).

I take the majority opinion to hold that if the officer had testified that one of the reasons he stopped the vehicle was because he observed a traffic infraction, the stop would have been upheld, but because the officer failed to so testify, that that infraction may not serve as the basis for a valid stop and the prosecution of a serious traffic infraction has been compromised.[3] The majority finds this result is dictated by *State v. Valdez,* 277 Or 621, 561 P2d 1006 (1977).

---

[1] It is not clear to me why the state did not raise the issue of defendant's standing to contest the validity of the stop.

[2] The trial court found that there was no reason to believe that defendant was not illegally parked as the officer testified.

[3] The trial court found that the officer's reason for stopping the vehicle was his suspicion that a crime might have been committed, and that at no time did the officer indicate that he stopped the vehicle because of any violation of any traffic law.

In *State v. Tucker,* 286 Or 485, 494, 595 P2d 1364 (1979), the Supreme Court said:

> "* * * *Valdez* was presented to both the Court of Appeals and this court as a case involving the validity of an investigatory stop. The state did not contend that the stop was justified by the traffic infraction and we did not decide the case on that basis."

In *Tucker,* Justice Tongue observed that:

> "*Valdez* simply holds that when a police officer says that although he observed a traffic violation he actually made a stop for an entirely different reason, and was not concerned with enforcement of the traffic laws, *the courts will take him at his word.* * * * " (Emphasis added.) 286 Or at 494.

Thus, taken together, *Valdez* and *Tucker* appear to establish a rule that the propriety of an officer's action will be judged by that officer's subjective motivation rather than by objective evidence. In my opinion such a rule is not logical or desirable.

In *State v. Carter/Dawson,* 287 Or 479, 485, 600 P2d 873 (1979), the Supreme Court held that an officer's *motives* are not relevant to the question of the validity of an otherwise justifiable traffic stop.[4] To me, this is reasonable and realistic. Applying *Carter/Dawson* to the facts here, I conclude that the trial court erred in allowing defendant's motion to suppress.

This case, as well as *Valdez, Tucker* and *Carter/ Dawson,* should be required reading for every law enforcement officer in the state.

---

[4] In *State v. Carter/Dawson,* 287 Or 479, 485, 600 P2d 873 (1979), the evidence indicated the officer deliberately placed the vehicle under surveillance before there was any traffic violation. The officer's primary interest was the investigation of recent burglaries in the area.