Argued and submitted July 30, 1982, reversed and remanded April 27, reconsideration denied June 10, petition for review denied July 26, 1983 (295 Or 447)

STATE OF OREGON,
*Appellant,*

*v.*

NORMAN L. SPENST,
*Respondent.*

(M2-2; CA A24211)

662 P2d 5

Stephen L. Peifer, Assistant Attorney General, Salem, argued the cause for appellant. With him on the brief were Dave Frohnmayer, Attorney General, and William F. Gary, Solicitor General, Salem.

Michael F. Najewicz, argued the cause and filed the brief for respondent.

Before Buttler, Presiding Judge, and Warren and Rossman, Judges.

WARREN, J.

Buttler, P. J., dissenting.

## WARREN, J.

Defendant was charged with driving under the influence of intoxicants in violation of ORS 487.540. He moved to suppress certain statements he made, evidence of observations by the arresting officer and the results of sobriety tests performed by defendant on the ground that the officer's stop of defendant and subsequent inquiry were unlawful. The trial court granted the motion. The state appeals, and we reverse and remand.

The trial court incorporated by reference in its order, a letter opinion that stated, in part:

"The motion to suppress will be allowed.

"I find the following relevant facts:

"While on patrol Deputy Barrett followed Mr. Spenst's vehicle at 45 to 50 miles per hour for about 1/2 mile. The deputy's patrol Bronco with rooftop light equipment was four lengths behind Spenst's pickup. At Meadow Lane and Burgess Road Spenst quickly moved his vehicle to the side of the snowy, icy road. The move was made without signalling. The deputy had no intention of stopping Spenst for the violation, though. The deputy pulled up his Bronco alongside and even with Spenst's car. Barrett leaned over to see what Spenst was doing. Spenst seemed to speak but Barrett could not hear so Barrett got out of the patrol car and walked to Spenst's door. When Spenst rolled down his window Barrett made observations that led him to a reasonable belief that Spenst was under the influence of intoxicants.

"* * * * *

"* * * I have relied on the following factors to conclude that Barrett restrained Spenst's liberty or required him to alter his course of conduct. 1. The patrol car followed Spenst as close as possible for 1/2 mile. 2. The patrol car was recognizable as a police car. 3. The patrol parked alongside and even with Spenst's car on a snowy, icy, slippery road where manueverability was limited. 4. The deputy got out of the car and initiated contact with Spenst in a manner identical with a 'stop' contact in furtherance of his intent to 'see what he was doing.' "

The issue is the nature of the encounter between defendant and the officer. In *State v. Kennedy,* 290 Or 493, 497, 624 P2d 99 (1981), the court described three kinds of

encounters between police and citizens: (1) an arrest, justified only by probable cause; (2) a stop, "a temporary restraint of a person's liberty by a peace officer lawfully present in any place," ORS 131.605(5), justified by a reasonable suspicion that the person has committed a crime, ORS 131.615(1); and (3) mere conversation, questioning without restraint of liberty, which needs no justification.

If the encounter here was a stop, the trial court properly granted the motion to suppress, because the officer admitted that, before the conversation at defendant's car, he had no reason to believe defendant had committed a crime and that he did not intend to stop defendant for failure to use his signal. *See State v. Henry,* 55 Or App 503, 638 P2d 1167 (1981), *rev den* 292 Or 863 (1982). If the encounter was mere conversation, which requires no justification, the trial court erred in granting the motion.

■ ■ The test to determine whether an encounter is a stop is whether the police, through physical force or a show of authority, restrained the liberty of the person encountered so that a reasonable person would not feel free to refuse to cooperate or leave the scene. *State v. Hanna,* 52 Or App 503, 508 n 4, 628 P2d 1246, *rev den* 291 Or 662 (1981); *State v. Brown,* 31 Or App 501, 506, 570 P2d 1001 (1977). In applying the facts here to this test, we are bound by the historical facts found by the trial court and supported by the record. However, contrary to the dissent's assertions, we are not bound by the trial court's legal conclusions. *State v. Miller,* 43 Or App 421, 424, 602 P2d 1141 (1979). Therefore, we are not bound by the trial court's conclusion that the officer's conduct here constituted a stop, nor are we bound by the fourth "factor" relied on by the trial court and the dissent, quoted above, because it is no more than a legal conclusion that the officer's contact with defendant was a stop.

■ The initial encounter here was not a stop. Defendant pulled off the road and stopped his car voluntarily. The officer had the same right as defendant to drive on a public highway. Although the officer was following four car lengths behind, he did not have on his overhead lights. There was no use of physical force or show of authority by the officer that would cause a reasonable person to believe

he must stop. *Cf. State v. Gibbons,* 21 Or App 339, 535 P2d 561 (1975), *overruled on other grounds, State v. Valdez,* 27 Or App 329, 556 P2d 132, *reversed on other grounds,* 277 Or 621, 561 P2d 1006 (1977) (officer's use of overhead lights to pull over a vehicle constitutes a stop).

Nothing the officer did after defendant pulled over constituted a stop. He pulled up next to defendant to see what he was doing. The officer had a right to stop there, either to render assistance to a motorist stopped on a snowy road at night or to satisfy normal curiosity. The fact that defendant would have had to maneuver around the police car to leave the scene does not constitute a restraint on his liberty. Because defendant stopped voluntarily, the location of the police car did not force him to alter his conduct; he was free to drive away. *See State v. Porter,* 38 Or App 169, 171, 589 P2d 1156 (1979).

Finally, the officer's act of approaching defendant's vehicle to converse with him did not transform this encounter into a stop. Defendant initiated the conversation. Because the officer could not hear defendant, he left his vehicle and approached the car. Defendant again initiated the conversation. Clearly, the officer's act of approaching defendant to respond to a conversation initiated by defendant did not restrain defendant in any way. The officer's observations of defendant during their conversation gave him a reasonable belief that defendant was intoxicated. Consequently, the court erred in granting defendant's motion to suppress.

Reversed and remanded for trial.

**BUTTLER, P. J.,** dissenting.

Unless we are prepared to require that trial courts accept a police officer's unlikely version of the historical facts, there was sufficient evidence here to support the trial court's conclusion that the conduct of the deputy sheriff amounted to a stop of defendant rather than a mere street encounter. Because the evidence, and the reasonable inferences to be drawn therefrom, support the trial court's conclusion that defendant was unlawfully stopped, we are bound by it. *Ball v. Gladden,* 250 Or 485, 443 P2d 621

(1968); *State v. Warner,* 284 Or 147, 585 P2d 681 (1978). Accordingly, I dissent.

To understand what occurred, more facts are necessary. The deputy had been parked at a gas station next to a tavern for approximately eight minutes before defendant came out of the tavern and drove off. Although the deputy testified that he did not see defendant come out of the tavern, he immediately started down the road behind defendant. He followed him for approximately one-half mile at a speed of 45 to 50 miles per hour on an icy and snowy road, remaining only four car lengths behind him. The deputy's patrol car, a Bronco, was equipped with flashers on the roof.

Defendant pulled to the side of the road near an intersection. Instead of going by defendant, the deputy pulled up along side defendant's car; he testified that he did so because he lacked sufficient opportunity to stop behind defendant on the shoulder. He stated that he leaned over and asked defendant what he was doing, but he did not roll down his window. He then got out of his car and approached defendant's vehicle with a flashlight to see if there were any weapons in the vehicle.

Although defendant did not give a turn signal when he pulled off the road, the officer stated he did not stop defendant for that reason. He further testified that he had no reason to believe that defendant had committed a crime that would authorize a stop under ORS 131.615(1). In fact, he testified he had no intention of stopping defendant.

The trial court's specific findings were:

"1. The patrol car followed Spenst as close as possible for 1/2 mile.

"2. The patrol car was recognizable as a police car.

"3. The patrol parked alongside and even with Spenst's car on a snowy, icy, slippery road where maneuverability was limited.

"4. The deputy got out of the car and initiated contact with Spenst in a manner identical with a 'stop' contact in furtherance of his intent to 'see what he was doing.'"

Those facts are supported by the record and, together with the reasonable inferences that the trial court was entitled

to draw from the evidence, support the trial court's conclusion that the officer's conduct was reasonably calculated to cause defendant to pull off the road, as he did, and to give the officer an opportunity to question him to "see what he was doing." The court was also entitled to conclude, as it did, that the officer restrained defendant's liberty or required him to alter his course of conduct. The trial court treated the deputy's conduct as constituting a stop. The evidence supports the court's findings, and the findings, together with the reasonable inferences that may be drawn from the evidence, support its conclusion that the deputy's conduct constituted a stop in violation of the statute, ORS 131.615. We are bound by that conclusion of a statutory violation.

Although it may be true that the ultimate face-to-face encounter between the deputy and defendant was nothing more than mere conversation (*i.e.,* a *Warner* encounter of the third kind), the manner in which that ultimate encounter was achieved was not an ordinary conversation on the street, as the majority would have us believe. In my opinion, the majority is being unrealistic in so holding.

Because I think we are bound by the findings and conclusions of the trial court, I would affirm. Accordingly, I dissent.