Argued and submitted July 22, reversed and remanded October 16, 1996

# STATE OF OREGON,
*Appellant,*

*v.*

# GERALD RAY ONSTAD,
*Respondent.*

(C95-03-31745; CA A88760)

925 P2d 154

Armstrong, J., filed concurring opinion.

Douglas F. Zier, Assistant Attorney General, argued the cause for appellant. With him on the brief were Theodore R. Kulongoski, Attorney General, and Virginia L. Linder, Solicitor General.

No appearance for respondent.

Before Warren, Presiding Judge, and Edmonds and Armstrong, Judges.

EDMONDS, J.

Armstrong, J., concurring.

## EDMONDS, J.

Defendant was indicted for delivery and possession of a controlled substance. ORS 475.992. Before trial, the trial court granted his motion to suppress evidence. The state appeals, and we reverse.

At approximately 9:30 p.m. on March 1, 1995, an officer was driving in a marked patrol car eastbound on West Burnside Street in Portland near the intersection of NW 20th Avenue and Burnside. He saw defendant walking with a woman westbound on the opposite side of the street and carrying a brown paper bag out of which the top of a bottle protruded. The officer was acquainted with defendant and, believing that defendant was carrying an open container of beer, stopped his car in the intersection, turned on his four-way emergency flashers and called out defendant's name. As defendant turned toward the officer, defendant pulled a white bindle from his jacket pocket and tucked it in the waistband of his pants.

After the officer left his patrol car, he saw that defendant was carrying a malt liquor bottle, that the bottle's seal was broken and that it was partially empty. The officer spoke to defendant about the open bottle,[1] and then pointed to defendant's waistband and asked him if the bindle contained cocaine. Defendant replied affirmatively, and the officer retrieved the bindle, which contained three packets of cocaine. Defendant was eventually arrested for delivery and possession of a controlled substance.

In his pretrial motion, defendant moved to suppress the bindle and evidence of his statements to the officer. He argued that the officer's conduct in stopping the police car, turning on his emergency flashers, and calling defendant's name constituted a "seizure" for purposes of Article I, section 9, of the Oregon Constitution and the Fourth Amendment to the United States Constitution and that the officer lacked probable cause under the circumstances to make a seizure. The trial court granted the motion to suppress,[2] and the state appeals.

---

[1] The Portland City Code makes it unlawful for a person to have an open container of alcoholic beverage on a public sidewalk.

[2] The trial court said that the officer "probably had reasonable suspicion" to stop defendant and make further inquiry but lacked probable cause to seize

■ In *State v. Holmes*, 311 Or 400, 813 P2d 28 (1991), the court explained that some encounters between a police officer and an individual do not constitute a seizure and, therefore, do not require any justification. Rather, a seizure of a person under Article I, section 9, occurs

"(a) if a law enforcement officer intentionally and significantly restricts, interferes with, or otherwise deprives an individual of that individual's liberty or freedom of movement; or (b) whenever an individual believes that (a), above, has occurred and such belief is objectively reasonable in the circumstances." *Id.* at 409-10.

Thus, an officer may "approach persons on the street or in public places, * * * [and] request or impart information, or question them without being called upon to articulate a certain level of suspicion in justification." *Id.* at 410. The encounter becomes a seizure only if the officer engages in conduct significantly beyond that accepted in ordinary social contacts and which has the effect of significantly restricting the individual's liberty or freedom of movement.

■ We conclude that the officer's actions in this case did not constitute a seizure of defendant.[3] When he parked in the intersection, the officer turned on his emergency flashers, a feature that all automobiles carry. He did not turn on his overhead lights, which are typically used to stop people; he did not block defendant's path and he did not display any show of physical force or in any other way communicate to

---

defendant's person. It reasoned that probable cause was required because the Portland City Code created an infraction rather than a crime. *See State v. Matthews*, 320 Or 398, 884 P2d 1224 (1994) (holding that an officer who stops and detains a person for a traffic infraction must have probable cause under Article I, section 9).

[3] The concurrence posits a variation of ORS 131.605(5) and Article I, section 9, when it would hold that a "stop" and a "seizure" occurred. A "stop" as used in the statute is a seizure under section 9. *State v. Kennedy*, 290 Or 493, 497, 624 P2d 99 (1981). The proper test is whether defendant believed that his liberty was restrained *and* whether, objectively, a reasonable person would have believed that he was being detained. The concurrence improperly relies on the prior contacts that were within the peculiar knowledge of defendant to supply the objective basis for the application of the test. As the court pointed out in *Holmes*, "[e]ven physical contact does not transform the encounter into a 'seizure' if it is a normal means of attracting a person's attention (*e.g.*, [a] policeman tapping [a] citizen on the shoulder at the outset to get [the] citizen's attention)." *Holmes*, 311 Or at 410. The hailing of defendant by his name cannot be characterized as conduct beyond that accepted in ordinary social intercourse if it had occurred between two ordinary citizens.

defendant that defendant was not free to leave. The fact that the officer and defendant were acquainted, which resulted in the officer calling defendant by name, did not significantly restrict defendant's liberty either. If anything, the officer's familiarity with defendant made the officer's conduct more like an encounter that would ordinarily occur between two acquaintances. We hold that the trial court erred in determining that the officer's conduct constituted a seizure or stop before he observed the bindle. We also conclude that the officer's conduct did not constitute a seizure under the Fourth Amendment. *See Holmes*, 311 Or at 413-14 (explaining that the test under the Fourth Amendment is similar to the test under Article I, section 9, in that an officer must "*meaningfully* deprive defendant of his liberty or freedom of movement") (emphasis in original). Because we have concluded that there was no seizure, we need not reach the state's other arguments.

Reversed and remanded.

**ARMSTRONG, J.,** concurring.

The majority reverses the trial court because it concludes that, based on the totality of the circumstances, the officer did not stop defendant before defendant moved the small white bindle from his pocket to his waistband. I believe that the officer stopped defendant before defendant moved the bindle, but because the stop was based on reasonable suspicion, I concur with the majority's result.

Under ORS 131.605(5), "[a] 'stop' is a temporary restraint of a person's liberty by a peace officer lawfully present in any place." A person is stopped when, considering the totality of the circumstances, "a reasonable person would have believed that his liberty had been temporarily restrained." *State v. Ehly*, 317 Or 66, 76, 854 P2d 421 (1993). That restraint can be made "through physical force or a show of authority." *State v. Spenst*, 62 Or App 755, 758, 662 P2d 5, *rev den* 295 Or 447 (1983). The state would have us conclude that the encounter between defendant and the officer was "mere conversation," not rising to the level of a stop, as defined in ORS 131.605(5).[1] It points out that the officer did

---

[1] In *State v. Warner*, 284 Or 147, 161, 585 P2d 681 (1978), the Oregon Supreme Court identified three types of encounters between officers and people on the street:

not order defendant to stop, block his path of travel, or physically touch or detain him, and it claims that *State v. Miller*, 120 Or App 349, 852 P2d 895 (1993), controls the outcome of this case. In *Miller*, we declined to hold that a stop occurred when an officer pulled up in his patrol car behind a vehicle already stopped on the side of the road, turned on the car's flashing yellow lights, and called out to the defendant. 120 Or App at 352.

When the totality of the circumstances surrounding the encounter in this case is considered, however, it is evident that this case is materially different from *Miller*. Here, the officer was traveling in a patrol car in the opposite direction from defendant. The officer turned the car into the intersection of N.W. 20th Avenue and West Burnside Street in Portland, and, rather than parking in a parking spot, stopped the car in the intersection and turned on its emergency flashers, thereby blocking traffic. The officer then got out of the car and called out defendant's name. Defendant knew the officer from numerous encounters on the street and knew that the officer was aware of his drug use. In nearly every past encounter between him and the officer, defendant had been searched. That the previous searches had been consensual does not negate the fact that defendant was aware that the officer was suspicious of him and his drug use. When the officer called out his name, defendant stopped.

Considering those factors together, the officer's behavior constituted a show of authority that a reasonable person in defendant's position would have felt he was not free to ignore. Therefore, his freedom was temporarily restrained and the encounter amounted to a stop.[2]

---

"(1) arrest, justified only by probable cause; (2) temporary restraint of the citizen's liberty (a 'stop'), justified by reasonable suspicion (or reliable indicia) of the citizen's criminal activity; and (3) questioning without any restraint of liberty (mere conversation) requiring no justification."

The state argues that the trial court erred when it placed this encounter in category two rather than category three.

[2] Those facts also lead to the conclusion that the officer had "seized" defendant under part (b) of the *Holmes* test cited by the majority. 144 Or App at 152. Under that test, defendant must subjectively have believed that he was "seized" and that belief must have been objectively reasonable. *State v. Holmes*, 311 Or 400, 409-10, 813 P2d 28 (1991). Here, when the officer stopped his vehicle in the street and called out defendant's name, defendant moved the bindle of cocaine from inside his

That conclusion, however, does not end the inquiry. A police officer may stop a person if, under the totality of the circumstances, the officer "reasonably suspects" that the person has committed a crime.[3] ORS 131.615(1); ORS 131.605(4); *State v. Walsh*, 103 Or App 517, 519, 798 P2d 262 (1990), *rev den* 311 Or 60 (1991). The issue here is whether, when he stopped defendant, the officer had a reasonable suspicion that defendant was violating PCC § 14.24.030, the "open container" ordinance.[4]

I would hold that the officer reasonably suspected that defendant was violating that ordinance when the officer made the stop. The officer testified that when he first saw defendant, defendant turned away from him, but he could see that defendant was carrying a brown paper bag with a glass bottle protruding out of it. He stated that the bottle stuck out of the bag in a way that would allow defendant to drink it on the sidewalk. He testified that, based on his experience, open containers of alcohol are typically carried in brown paper bags, and that he had never seen a person carry a bottle of soda pop that way. Further, the area of Portland where the

right jacket pocket to down the front of his waistband. If defendant felt he was free to walk away from an encounter with the officer, or that he and the officer were "acquaintances" who were going to have a chat, there would be no reason for him to move the cocaine to a location less likely to be discovered if he were searched. The logical conclusion to draw from defendant's behavior is that defendant subjectively thought he was "seized" by the officer and was not free to walk away. As outlined in the body of the opinion above, that belief was objectively reasonable under the circumstances.

[3] The trial court erroneously concluded that the officer needed probable cause to justify the stop of defendant because defendant's suspected conduct was an infraction rather than a crime. *See State v. Matthews*, 320 Or 398, 884 P2d 1224 (1994) (probable cause required to stop and investigate suspected violation of an infraction). The court concluded that the Portland City Code (PCC) provision against possessing a container of alcohol with a broken seal in public, PCC § 14.24.030, was a lesser-included offense of the Oregon Vehicle Code's provision against possessing a container of alcohol with a broken seal in a vehicle. ORS 811.170. I disagree with that conclusion. The provisions do not apply to the same conduct; they have different elements; and they are directed at different objectives. The Portland City Code provision is a separate criminal provision, with criminal penalties. PCC § 14.24.030; PCC § 14.08.020. Therefore, the officer needed only reasonable suspicion to justify the stop. ORS 131.615(1).

[4] Section 14.24.030 of the Portland City Code provides in relevant part:

"(b) It is unlawful for any person to have in his possession while upon any street, sidewalk, or other public right-of-way any bottle, can, or other receptacle containing any alcoholic liquor which has been opened or a seal broken or the contents of which have been partially removed."

stop took place is known to have drug problems, and the officer testified that every arrest he had made on that corner was for drug-related offenses. When the officer saw defendant, he suspected that defendant was violating the "open container" ordinance. Considering all of the circumstances, that suspicion was reasonable.

In summary, at the point when the officer called out defendant's name, based on the totality of the circumstances, a stop occurred. However, the stop was justified under ORS 131.615 because at that moment the officer had a reasonable suspicion that defendant had violated a criminal ordinance. For those reasons, I concur in the majority's result but not in its reasoning.