Argued and submitted June 25, reversed and remanded October 1, 1997

# STATE OF OREGON,
*Respondent,*

*v.*

# LAURENCIO MORENO,
*Appellant.*

## (C9511-38682; CA A93116)

946 P2d 317

Irene B. Taylor, Deputy Public Defender, argued the cause for respondent. With her on the brief was Sally L. Avera, Public Defender.

Kaye E. Sunderland, Assistant Attorney General, argued the cause for respondent. With her on the brief were Hardy Myers, Attorney General, and Virginia L. Linder, Solicitor General.

Before Warren, Presiding Judge, and Edmonds and Armstrong, Judges.

EDMONDS, J.

## EDMONDS, J.

Defendant was convicted of possession and delivery of a controlled substance. ORS 475.992. He appeals and assigns error to the trial court's denial of his motion to suppress. We reverse.

Portland Police Officers Moylan and Cummings saw defendant walking in downtown Portland. They noticed that defendant looked at them in an odd manner. The following day, they saw him again and, when defendant again looked at them oddly, the officers decided to stop and question him. At no time did they see defendant violate any law, nor did they believe that he was under the influence of alcohol or drugs.

Defendant had his hands in the pockets of his jacket. Cummings asked defendant in Spanish and in English for his name. Defendant told the officers his name. Cummings then asked "Cuchillos or pistolas?" which means knives or guns in Spanish. Defendant did not respond. Defendant then put his hands deeper into the pockets and continued to stare at Cummings. Cummings was not sure if defendant understood him or if he was refusing to answer. Cummings then asked him again "Cuchillos or pistolas?" Defendant responded, "No." Moylan testified that because defendant was so tense and acting wary, he thought that "it was possibly dangerous to us right then, the way he was acting." Cummings testified that defendant's response was not consistent with his body language because defendant maintained his physical stance and eye contact. He said that he was concerned because defendant's motion could have indicated that defendant was seeking to obtain a better grip on a weapon that might be in his pocket.

Cummings then made a motion to defendant with his hands to "take your hands out of your pockets." Cummings did not know how to ask that question in Spanish. Cummings said that when he first made the motion, defendant appeared to freeze even more and stared intently at him. Cummings then motioned again for defendant to remove his hands from his pockets, and defendant slowly took his hands out of his pockets. Based on defendant's

actions, Cummings testified that he "was convinced that [defendant] actually had something in his pocket and that he had left it in the pocket and was showing me his bare hands." Cummings then patted down defendant's left pocket to see if he had any weapons. He felt objects that felt like drugs. He then reached into defendant's pocket and removed the bindles of cocaine from his pocket that are the subject of defendant's motion.

In response to defendant's motion, the trial court first ruled that defendant was not stopped when the officers encountered defendant and began talking to him. The court then ruled that the officers had an objective reason to be concerned for their safety because of the way in which defendant reacted to their questions and requests. Thus, the court concluded that, because the encounter was lawful and the officers had developed a reasonable suspicion that defendant posed a threat to their safety, the pat-down was lawful. *See State v. Bates*, 304 Or 519, 524, 747 P2d 991 (1987) (holding that officers engaged in a stop may take reasonable precautions for their safety). Defendant appeals.

■    Defendant argues that when Cummings conducted the pat-down search, his person was unlawfully seized under ORS 131.615 and ORS 131.625, Article I, section 9, of the Oregon Constitution, and the Fourth Amendment to the United States Constitution. He contends that he was "stopped" as defined by ORS 131.605(5) when the officers asked him if he had any knives or guns, because the question was "outside the realm of questions that are considered within 'acceptable social intercourse.' " ORS 131.605(5) provides that "a 'stop' is a temporary restraint of a person's liberty by a peace officer lawfully present in any place."

A person is stopped when, considering the totality of the circumstances, "a reasonable person would have believed that his liberty had been temporarily restrained." *State v. Ehly*, 317 Or 66, 76, 854 P2d 421 (1993). That restraint can occur "through physical force or a show of authority." *State v. Spenst*, 62 Or App 755, 758, 662 P2d 5, *rev den* 295 Or 447 (1983).

■    In this case, the police officers approached defendant as he was standing on the street. They began a discussion

with him by asking him his name in Spanish and English. They next asked him if he was carrying any knives or guns. Those circumstances do not suggest that a reasonable person would have believed that his liberty had been temporarily restrained by the officers. The officers merely asked questions. Defendant could have refused to have answered the questions and walked away. The totality of the circumstances demonstrates that the officers were engaged in mere conversation with defendant and that defendant was not "stopped" at that point.

Defendant next argues that there was not a legal basis for Cummings to conduct the pat-down. In *State v. Bates*, 304 Or 519, 524, 747 P2d 991 (1987), the court held:

"Article I, section 9, of the Oregon Constitution, does not forbid an officer to take reasonable steps to protect himself or others if, during the course of a lawful encounter with a citizen, the officer develops a reasonable suspicion, based upon specific and articulable facts, that the citizen might pose an *immediate threat of serious physical injury* to the officer or to others then present." (Emphasis supplied.)

■ In this case, the officers' testimony does not support the conclusion that defendant posed an *immediate threat* to their safety. At best, the evidence shows that the officers had a generalized concern for their safety that would be present any time an officer approaches a citizen and begins questioning the person. There are no articulable facts that demonstrate objectively, such as gestures or threats, that the officers were in danger. Once defendant complied with Cumming's request and showed his hands, the officers were not justified in conducting the pat-down of defendant.[1] Because the pat-down and subsequent search of defendant were unlawful, the trial court erred in denying defendant's motion to suppress.

Reversed and remanded.

---

[1] Cummings testified that once a subject shows his hands, the concern about officer safety decreases because the officer can see what is in the person's hands.