Argued September 25, reversed and remanded for new trial
December 26, 1978

STATE OF OREGON, *Respondent,*
*v.*
CHARLOTTE LORRAINE LAWSON, *Appellant.*
(No. 77-88911, CA 10836)
588 P2d 110

Susan Longbrook, Portland, argued the cause and filed the brief for appellant.

William F. Nessly, Jr., Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were James A. Redden, Attorney General, and Walter L. Barrie, Solicitor General, Salem.

Before Schwab, Chief Judge, and Lee, Richardson and Joseph, Judges.

LEE, J.

**LEE, J.**

Defendant was found guilty of carrying a loaded weapon in the city (Portland Municipal Ordinance No. 138210) and carrying a concealed weapon (ORS 166.240). These two charges were consolidated for trial pursuant to a motion by the state.

Defendant contends that the trial court erred (1) in denying her motion to suppress evidence seized pursuant to a warrantless search of her purse, and (2) in granting the state's pretrial motion to exclude her choice-of-evils defense (ORS 161.200). After hearings on these issues defendant stipulated to the evidence received and the trial court found defendant guilty of both charges.

Defendant's testimony was that she joined her friend, Michael Smith, at approximately 3 a.m. on December 3, 1977. At that time, Smith appeared very upset and emotionally disturbed—he was "shaking, nervous [and] crying." When defendant entered the passenger side of Smith's car, she saw a pistol lying on the seat. Smith explained to her that a few minutes earlier three white men had harassed him at a restaurant because he was black. They had threatened physical harm, beat upon his car, and told him to go back to his side of town. Smith wanted to return to the restaurant to pick up his food order. At this point, defendant put the gun in her purse because she was afraid that in his state of mind he might use the gun when he returned to the restaurant.

Meanwhile, Officers Clarke and Kline had responded to a call that a black man had brandished a gun at the restaurant. When they arrived at the restaurant Clarke interviewed two witnesses. Clarke testified that one witness told him that the black man had been accompanied by a black woman.[1] Approximately 15 minutes after the initial confrontation

---

[1] Although neither witness corroborated Clarke's testimony, the trial court found that the police believed that the suspect had been accompanied by a black female.

between Smith and the three men, he and defendant returned to the restaurant. Smith got out of the car and entered the restaurant through the double glass doors and defendant followed. While defendant was entering the first doors of the restaurant, she saw that an officer was frisking Smith. When the officer failed to find a gun on Smith's person, he turned to defendant and asked her if she had Smith's gun. Defendant answered negatively, but the officer opened her "large" purse and found the gun "right on top." During the time that the officer was with Smith and defendant, another officer was having trouble restraining one of the white men who had allegedly harassed Smith at the restaurant.

## I

Defendant moved to suppress evidence of the gun on the ground that it was seized pursuant to a warrantless search without probable cause, consent or exigent circumstances. We disagree.

■ The officers responded to a call that a man was brandishing a gun at a restaurant. The incident was observed by two independent witnesses. While the officers were investigating, Smith and defendant appeared at the restaurant. Smith was identified as the man who had brandished a gun approximately 15 minutes earlier. On the basis of these facts it would be illogical for the officers to conclude that Smith had returned *without* the gun. The officers therefore had probable cause to believe that either Smith or his companion had the weapon. In addition, at least one white man was aggressively attempting to "go at it again" with the blacks. One of the officers testified that he feared for the safety of bystanders These circumstances were sufficient to justify the search for the gun.

## II

After hearing the evidence on defendant's motion to suppress the gun, the state moved to exclude defendant's choice-of-evils defense on the ground that there

was no evidence to support it. A second hearing was held on this issue and the court granted the state's motion. Defendant contends she was entitled to have her theory of the case considered. We agree.

■■ Oregon's choice-of-evils statute provides:

"(1) * * * [C]onduct which would otherwise constitute an offense is justifiable and not criminal when:

"(a) That conduct is necessary as an emergency measure to avoid an imminent public or private injury; and

"(b) The threatened injury is of such gravity that, according to ordinary standards of intelligence and morality, the desirability and urgency of avoiding injury clearly outweigh the desirability of avoiding the injury sought to be prevented by the statute defining the offense in issue.

"* * * * *." ORS 161.200.

As this statute has been construed in *State v. Matthews,* 30 Or App 1133, 1136, 569 P2d 662 (1977), defendant is entitled to the choice-of-evils defense if there is evidence that:

"(1) * * * [H]is conduct was necessary to avoid a threatened injury; (2) * * * the threatened injury was imminent; and (3) * * * it was reasonable for defendant to believe that the need to avoid that injury was greater than the need to avoid the injury which the [other statute] seeks to prevent."

If there is any evidence in the record from which the required elements of justification could be inferred, the issue should be considered. *See State v. Matthews, supra* at 1136.

■ In the instant case, there is evidence that defendant put the gun in her purse because she was afraid that in his state of mind Smith might have used it when he returned to the restaurant. We conclude that the evidence presented by the defendant was sufficient to require the submission of the choice-of-evils defense to the trier of fact.

Reversed and remanded for a new trial.