Argued and submitted October 24, reversed and remanded
for a new trial December 1, 1980

## STATE OF OREGON,
*Respondent,*

*v.*

## RICHARD ALLEN BURNEY,
*Appellant.*

(No. C 79-12-34385, CA 17827)

619 P2d 1336

Hollis K. McMilan, Metropolitan Public Defender, Port-
land, argued the cause and filed the brief for appellant.

John C. Bradley, Assistant Attorney General, argued the cause for respondent. With him on the brief were James M. Brown, Attorney General, John R. McCulloch, Jr., Solicitor General, and William F. Gary, Deputy Solicitor General, Salem.

Before Gillette, Presiding Judge, and Roberts and Campbell, Judges.

GILLETTE, P. J.

### GILLETTE, P. J.

This is a criminal case in which the defendant was charged with the offense of being an ex-convict in possession of a firearm. ORS 166.270.[1] He was found guilty after a trial to the court. The sole issue on his appeal is whether the trial court erred in refusing to consider the "choice of evils" defense, ORS 161.200, in assessing the evidence presented at trial. We reverse and remand.

The principle facts are not in dispute. Defendant, who is an ex-convict, moved from Boise, Idaho, to Portland on November 6, 1979. The weekend prior to moving, he had been fishing with a friend. That friend left a pistol in defendant's pickup, without defendant's knowledge. Several weeks later, on the evening of the incident in question, the defendant found the pistol. The circumstances surrounding its discovery led to the crime charged in this case.

Shortly after midnight on December 2, 1979, defendant was returning home from a birthday celebration. He pulled into the lot behind the Burger King, at Broadway and Burnside in Portland, to have a hamburger. The

---

[1] ORS 166.270 provides that

"(1) Any person who has been convicted of a felony under the law of this state or any other state, or who has been convicted of a felony under the laws of the Government of the United States, who owns, or has in his possession or under his custody or control any pistol, revolver, or other firearms capable of being concealed upon the person, or machine gun, commits the crime of exconvict in possession of a firearm.

"(2) For the purposes of this section, a person 'has been convicted of a felony' if, at the time of his conviction for an offense, that offense was a felony under the law of the jurisdiction in which it was committed. Provided, however, that such conviction shall not be deemed a conviction of a felony if:

"(a) At the time of conviction, and pursuant to the law of the jurisdiction in which the offense occurred, the offense was made a misdemeanor by the type or manner of sentence actually imposed; or

"(b) The offense was for possession of marijuana.

"(3) Subsection (1) of this section shall not apply to any person who has been convicted of only one felony under the law of this state or any other state, or who has been convicted of only one felony under the laws of the United States, which felony did not involve the possession or use of a firearm, and who has been discharged from imprisonment, parole or probation for said offense for a period of 15 years prior to the date of alleged violation of subsection (1) of this section.

"(4) Exconvict in possession of a firearm is Class C felony."

Burger King was closed. When defendant went back to his pickup, it would not start.

Thinking the pickup would start again if he let it sit for a while, defendant went to call his wife to let her know what was happening. While waiting, he had a glass of wine and played a few games of pool for money in Mary's Club, a nearby establishment. Defendant won ten to six-teen dollars and decided to leave. He had just left Mary's when he noticed Griffin, one of the persons from whom he had won money, coming out of the club with a broken-down cue stick. Because Griffin had been belligerent and was acting strangely, defendant was afraid of him. Specifically, defendant feared Griffin would try to take his money back.

Defendant stopped and asked what Griffin wanted. He walked beside Griffin for a short distance. Griffin became involved in an altercation with an unknown person who bumped into him on the sidewalk. Another unknown person intervened. Defendant left as Griffin and the other two were straightening things out.

Defendant had crossed Burnside and was in the parking lot where his pickup was parked when he heard running footsteps behind him. He turned as he reached his truck and saw Griffin "coming out" at him. Defendant reached under the seat of the pickup for a tire iron to protect himself from what he feared was an impending attack. Instead of the tire iron, he felt his friend's pistol. He had not known until that moment that the pistol was there. Defendant pointed the pistol at Griffin's legs and told him to get away. Griffin left. Defendant tossed the pistol back under the seat and tried to restart his truck. Before he could start it, the police arrived.

James Powell, a Portland police officer, testified that on December 2, 1979, at 2:40 a.m. he received a radio call to go to the Sealander Restaurant. When Officer Powell arrived he observed Patrick Griffin, who had a cue stick in his hand, pointing to the defendant's vehicle and saying the defendant had a gun on his person. The police immediately approached the defendant's vehicle and ordered him out of his truck. Once outside the defendant denied having

a gun.[2] The police searched the vehicle and found the handgun under the passenger seat. The defendant was then advised of his rights, whereupon he admitted he pointed the gun at Griffin because Griffin was threatening him with a cue stick. He also admitted to the officers at the scene that he had been convicted of rape in Utah.

After considering all of the evidence, and indicating that he believed the defendant's story with respect to the circumstances under which the incident occurred, the trial judge found the defendant guilty of the charge. He specifically ruled that the defense of "choice of evils" was not available in a case in which the defendant is charged with being an ex-convict in possession of a firearm. The defendant argues that, because the evidence showed (and the trial judge apparently believed) that the defendant feared for his safety, the defense was applicable.

The "choice of evils" defense is set out in ORS 161.200 as follows:

"(1) Unless inconsistent with other provisions of chapter 743, Oregon Laws 1971, defining justifiable use of physical force, or with some other provision of law, conduct which would otherwise constitute an offense is justifiable and not criminal when:

"(a) That conduct is necessary as an emergency measure to avoid an imminent public or private injury; and

"(b) The threatened injury is of such gravity that, according to ordinary standards of intelligence and morality, the desirability and urgency of avoiding the injury clearly outweigh the desirability of avoiding the injury sought to be prevented by the statute defining the offense in issue.

"(2) The necessity and justifiability of conduct under subsection (1) of this section shall not rest upon considerations pertaining only to the morality and advisability of the statute, either in its general application or with respect to its application to a particular class of cases arising thereunder."

---

[2] The police testified that defendant denied having a gun. Defendant testified that he denied having a gun *on his person,* because he understood the officer's question to be directed at that possibility. The trial judge specifically stated that he believed defendant's testimony.

■ We think that the trial judge's conclusion that ORS 161.200 is inapplicable to the offense of being an ex-convict in possession of a firearm is incorrect. The statute contains no such express exception, and we see no justification for implying one. To the contrary, one who has been previously convicted of a felony is just as entitled to defend himself from an imminent threat of injury as is any other private citizen. We hold that the defense is available to those who have been previously convicted of a felony and, in appropriate circumstances, may justify their resort to a weapon which it would otherwise be unlawful for them to possess.

■ We have previously stated that a defendant is entitled to the choice of evils defense if there is evidence that

"(1) * * * [H]is conduct was necessary to avoid a threatened injury; (2) * * * the threatened injury was imminent; and (3) * * * it was reasonable for defendant to believe that the need to avoid the injury was greater than the need to avoid the injury which the [other statute] seeks to prevent." *State v. Matthews,* 30 Or App 1133, 1136, 569 P2d 662 (1977); *State v. Lawson,* 37 Or App 739, 588 P2d 110 (1978).

The trial judge apparently found all of those elements present in this case, but declined to apply the defense solely because he believed it was unavailable in this kind of charge. Inasmuch as he was mistaken in this premise, his rationale in convicting the defendant was erroneous.

■ A question remains as to whether or not this error requires reversal. The state argues that, even if we decide that the choice of evils defense was available to the defendant, all of the testimony establishes that the defendant maintained control of the gun far beyond the time it was necessary to do so in order to protect himself. In fact, the gun was hidden away in the defendant's pickup and was only discovered after a police search. In light of this evidence, the state argues, the defendant is guilty in any event, and we should affirm. *See* Or Const, Amended Article VII, § 3. *Cf., State v. Mack,* 31 Or App 59, 569 P2d 624 (1977).

We agree with the state that there was sufficient evidence from which the trial court could find that the

defendant was guilty of being an ex-convict in possession of a firearm for the period of time during which, by his own admission, he retained the gun after the threat to his person had ended. However, the evidence was not such as to require the trial court to find the defendant guilty. The reason for defendant's hiding of the gun is not established. He may have intended to return it to its owner in Idaho. On the other hand, he may have intended to turn it over to a policeman as soon as possible. If the former was his intent, he is guilty. If the latter was, he may not be; it would be unconscionable to hold defendant guilty for continuing to possess a gun which came into his possession rightfully, unless and until he thereafter had a reasonable opportunity to divest himself of it in a manner which would not create a public peril.

Defendant was never asked what his intent was. There are permissible inferences both ways. The question is one for a trier of fact.

Reversed and remanded for a new trial.