Argued and submitted July 10, 1981, affirmed April 26, 1982

# STATE OF OREGON,
*Respondent,*

*v.*

# JAMES LEROY McGREGOR,
*Appellant.*

### (No. 37646, CA 19972)

643 P2d 1315

Marilyn C. McManus, Deputy Public Defender, Salem, argued the cause for appellant. With her on the brief was Gary D. Babcock, Public Defender, Salem.

Virginia L. Linder, Assistant Attorney General, Salem, argued the cause for respondent. With her on the brief were Dave Frohnmayer, Attorney General, and William F. Gary, Solicitor General, Salem.

Before Buttler, Presiding Judge, and Joseph, Chief Judge, and Warren, Judge.

BUTTLER, P. J.

## BUTTLER, P. J.

Defendant appeals his conviction of the offense of ex-convict in possession of a concealable firearm. ORS 166.270. The sole issue is whether the trial court erred in denying defendant's motion to suppress the handgun seized during a warrantless search of the automobile in which defendant was sitting at the time he was stopped by police. The handgun was in a closed, zippered gun case found underneath the automobile seat, and was seized and opened by the police without a warrant. We affirm.

On October 17, 1980, Portland FBI agents received information that one Davis and another man had robbed a Portland bank the preceding day and that Davis was planning another robbery in the Portland area. Davis was believed to be armed. The agents also learned that Davis had left a van at a Corvallis repair shop, had left $800 cash to have the work done and then rented a 1980 Dodge Omni to drive to Portland, accompanied by defendant.

After having obtained this information, the FBI set up surveillance on October 17 in Portland, during the course of which defendant, Davis and two women were observed walking toward the Omni. Defendant was observed carrying a triangular dark leather pistol case as he entered the car. The agents followed the Omni to Corvallis; Davis was driving and defendant was in the right-front passenger seat. On arrival in Corvallis, Davis was arrested by local police after he paid his repair bill for the van.

One of the FBI agents observed the Omni parked one and one-half blocks south of where Davis was being arrested, and he and another agent blocked the car with their automobiles. Defendant was sitting in the driver's seat. One of the agents ordered defendant out of the car and directed him to place his hands on top of the vehicle. Defendant did so, standing beside the driver's door, which was left open. The other agent went to the right side of the car and ordered the two women and a child to get out. He then opened the front passenger door and checked for weapons under both the driver's and passenger's seat.

Under the passenger's seat he found what he recognized to be a handgun carrying case, which he unzipped and

found a. 45 caliber automatic pistol, loaded with two rounds of ammunition, and a magazine. The other agent then patted down defendant and found a large wad of bills, whereupon defendant was arrested.

Defendant concedes that the FBI agents had authority under ORS 131.615[1] to make the initial investigatory stop. He contends, however, that the search under the passenger's seat of the car exceeded the permissible scope of a *Terry*[2]-type stop, but that even if the limited search of the car was reasonable under the circumstances, the most the agents could do was to seize the gun case without opening it unless and until a warrant was obtained.

■ Although the underlying purpose of a search of the person following a *Terry*-type stop is the protection of the police officers and is, therefore, generally limited to a pat-down search for what might be weapons,[3] circumstances may permit a more extensive intrusion. We noted in *State v. Miller,* 45 Or App 407, 410-11, 608 P2d 595, *rev den* 289 Or 275 (1980), that:

"A law enforcement officer, in the process of making an arrest *or questioning* a person suspected of criminal activity, may take reasonably necessary measures to protect himself and other persons from injury. *State v. Riley,* [240 Or 521, 402 P2d 741 (1965)]; *Terry v. Ohio,* 392 US 1, 88 S

---

[1] ORS 131.615 provides:

"(1) A peace officer who reasonably suspects that a person has committed a crime may stop the person and, after informing the person that he is a peace officer, make a reasonable inquiry.

"(2) The detention and inquiry shall be conducted in the vicinity of the stop and for no longer than a reasonable time.

"(3) The inquiry shall be considered reasonable only if limited to the immediate circumstances that aroused the officer's suspicion."

Defendant does not contend that the FBI agents (being federal officers) were not "peace officers" within the meaning of ORS 131.615. Accordingly, we do not consider that question. *But see* ORS 133.005(2).

[2] *Terry v. Ohio,* 392 US 1, 88 S Ct 1868, 20 L Ed 2d 889 (1968).

[3] In *Terry v. Ohio, supra,* n 2, the Court said:

"* * * The sole justification of the search in the present situation is the protection of the police officer and others nearby, and it must therefore be confined in scope to an intrusion reasonably designed to discover guns, knives, clubs, or other hidden instruments for the assault of the police officer." 392 US at 29.

Ct 1868, 20 L Ed 2d 889 (1968). If the reasonable needs of protection require the officer to enter constitutionally protected areas, such as a vehicle, the inquiry is the reasonableness under all the circumstances of the intrusion." (Emphasis supplied.)

In *Miller,* we relied on *State v. Riley,* 240 Or 521, 402 P2d 741 (1965),[4] where the court said:

"* * * To justify the seizure of a weapon which could be used against the arresting officer we shall not draw a fine line measuring the possible risk to the officer's safety. The officer should be permitted to take every reasonable precaution to safeguard his life in the process of making the arrest." 240 Or at 524-25.

The Court of Appeals for the Seventh Circuit elaborated more fully on the permissible extent of a search for weapons following a *Terry*-type stop in *United States v. Rainone,* 586 F2d 1132, 1134-35 (7th Cir 1978):

"Obviously in a sidewalk encounter with a pedestrian, such as occurred in *Terry,* the officer's need to protect himself from dangerous weapons is fully satisfied by a pat-down of outer clothing of the suspect. However, where the suspect is driving an automobile, a pat-down of the outer clothing may not be sufficient to assure the safety of the police officer. In those cases there is the real possibility that a weapon may have been secreted in a part of the automobile readily accessible to the suspect. This is particularly true where the suspect remains in the car, [footnote omitted] but is also true even where the suspect has been

---

[4] In *State v. Riley,* 240 Or 521, 402 P2d 741 (1965), the court upheld the seizure of a gun, the butt of which was seen sticking out from under the front seat of a car after the car was validly stopped for having defective tail lights. As the defendant was here, Riley was convicted of being an ex-convict in possession of a concealable firearm. Riley's status, however, was not known until *after* the gun was seized from the car. The court relied on both the reasonableness of the seizure for the protection of the officers after the stop and on the officers' having probable cause to believe that Riley was violating ORS 166.250, making it unlawful, without a license, to carry concealed within a vehicle a firearm capable of being concealed upon the person.

Although the state does not so contend here, it appears that the agents had probable cause to believe defendant was violating ORS 166.250. Assuming that they did, the question remains whether there were exigent circumstances justifying the limited, but warrantless, search of the automobile. It may be that having probable cause to believe that defendant had a gun was an exigent circumstance in the light of the officers' right to look out for their own safety. That kind of reasoning seems to get us back to the same inquiry discussed in the body of the opinion.

removed from the car. In the latter instance there is still a risk that the suspect may break away or that he may have a motive to kill the officer even after returning to his car. [Footnote omitted.] Thus, it is clear that the rationale of *Terry* — the protection of the investigating officer and others nearby — permits the officer to make a search of the automobile, limited to what is minimally necessary to uncover weapons to which the suspect will have easy access."

Here the agents were warranted in believing that the defendant was armed when he entered the Omni; they observed him carrying a pistol case. They "stopped" him for investigative questioning because they reasonably suspected he had been involved in an armed robbery. Under those circumstances, it was reasonable for them to search the front compartment of the automobile for weapons for their own protection. Although defendant was standing outside the automobile, he was standing by the driver's door, which was open. The search under the driver and front passenger seats was reasonable.[5]

The agents having searched that portion of the automobile and seized the closed gun case, the question remains whether the agents were precluded from opening it without a warrant. In *Robbins v. California*, 453 US 420, 101 S Ct 2841, 69 L Ed 2d 744 (1981), the United States Supreme Court, with splintered views, reversed a convic-

---

[5] In a similar case, the Supreme Court of Arkansas held that a search of the suspect's car for weapons was reasonable in *Hill v. State*, 275 Ark 71, 628 SW2d 284 (1982). The court said:

"The search here was completely reasonable when considered under the totality of the existing circumstances. The officers would have taken an unnecessary risk if they had attempted to talk with the appellant before searching him and the accessible areas of his car; removing appellant from his car was a prerequisite to the safety of the officers in making such a search. Although appellant was standing behind the car with his hands on the trunk at the time of the search, the mere fact of appellant's removal from the car did not remove the possible danger to the officers and thereby obviate the necessity for the search. It was certainly reasonable to believe that a suspect believed to have kidnapped, robbed, and executed a Game and Fish Officer and, simultaneously, attempted to do the same thing to another person was capable of breaking for a weapon inside his car, and probably would have been highly motivated to do so. Here, the limited search of the car was both 'justified at its inception' and 'reasonably related in scope to the circumstances which justified the interference in the first place.' *Terry v. Ohio, supra.*" 628 SW2d at 289.

tion because of the warrantless search of wrapped packages seized by police as a result of the lawful search of the luggage compartment of a car following a traffic arrest. The lead opinion, representing the views of four Justices, reasoned that a person has no reasonable expectation of privacy in a container if the container so clearly announces its contents, "whether by its distinctive configuration, transparency, or otherwise, that its contents are obvious to the observer." 453 US at 420. There the evidence did not support the conclusion that a green plastic wrapping reliably indicated that a package could only contain marijuana. *See State v. Nichol,* 55 Or App 162, 637 P2d 625 (1981), *rev den* 292 Or 581 (1982).

The same analysis applies here: the pistol case, by its distinctive configuration, indicated its contents. Accordingly, we conclude that defendant did not have a reasonable expectation of privacy with respect to the case and, after it was seized, it was reasonable for the agents to open it without obtaining a warrant.

Affirmed.

**JOSEPH, C. J.,** dissenting.

The remarkable concession by defendant that his stop by the agents was lawful under ORS 131.615 casts this case with a strange light, for the validity of the stop would otherwise be doubtful. On that concession, the majority builds a result that violates both the statute and the state and federal constitutions. The facts do not describe a stop for "a reasonable inquiry." They describe a full custody arrest without probable cause,[1] a search that would be valid if this were a *State of New York v. Belton,* 453 US 454, 101 S Ct 2860, 69 L Ed 2d 768 (1981), case (which it was not) and a seizure and opening of a "package" after the officers' protection had been fully secured. If the applicable test were, as I believe it should be, whether the officers' conduct was reasonable in all the circumstances, the majority's result would be correct. That is not (yet) the test, and the majority is wrong.

---

[1] Although Davis was a robbery suspect, I do not find in the record support for the majority's statement that the officers "reasonably suspected [defendant] had been involved in an armed robbery."

Reliance on loose language in *State v. Miller,* 45 Or App 407, 410-11, 608 P2d 595, *rev den* 289 Or 275 (1980) is misplaced. In the first place, that case says that the intrusion that led to the discovery of marijuana was not a search. In the second place, the issue was treated as being only the lawfulness of the *seizure.* In the third place, the whole foundation of the case is that everything that happened was in the course of a lawful arrest. Whatever the validity of that decision, it provides *no* support for the majority. *State v. Riley,* 240 Or 521, 402 P2d 741 (1965), a pre- *Terry* case, is no help either; not only does it suffer from old age, it is an *arrest* case. As for *Hill v. State,* 275 Ark 71, 628 SW2d 284 (1982), I wish Arkansas well in sustaining that one in the Supreme Court of the United States.

I would hold that the original intrusion in the car was unlawful, even though reasonable. I would not reach the question of the opening of the gun case. Therefore, I dissent.