Argued and submitted July 30, 1982, reversed and remanded April 13,
reconsideration denied September 16, 1983

# STATE OF OREGON,
*Appellant,*

*v.*

# ARNOLD RAY BOWCUTT,
*Respondent.*

## (DA 218529-8108; CA A23902)

661 P2d 565

Thomas H. Denney, Assistant Attorney General, Salem, argued the cause for appellant. With him on the brief were Dave Frohnmayer, Attorney General, and William F. Gary, Solicitor General, Salem.

Wayne Mackeson, Portland, argued the cause for respondent. On the brief was Des Connall, Portland.

Before Buttler, Presiding Judge, and Warren and Rossman, Judges.

WARREN, J.

## WARREN, J.

Defendant was charged with unlawful possession of a weapon in violation of ORS 166.250. He moved to suppress evidence of the weapon and his statments concerning it. After a hearing, the trial court granted defendant's motion and dismissed the complaint. The state appeals, and we reverse and remand.

The undisputed facts are derived from testimony given at the hearing on defendant's motion by Lt. Dan Lambert and Sgt. Robert Walliker of the Multnomah County Sheriff's Department. The officers responded to a call for assistance from Officer Morrow, who was at the scene of a domestic disturbance. The cause of the disturbance apparently was Robert Goff's efforts to remove his property from the house of Sheryl Bowcutt, defendant's daughter. Bowcutt had become "hysterical and wild" and had been placed under arrest by Morrow for harrassment. Neighbors of Bowcutt were on the premises, and Lambert described the scene as "chaotic." Soon after Lambert arrived, Goff said that he had just spoken to defendant over the phone, that defendant was angry at him, that defendant was coming to his daughter's house with a gun that he always carries with him and that he believed defendant would shoot him.

Three to five minutes later, a large van came to a skidding stop on the gravel shoulder of the road in front of the residence, nearly running over Lambert. Defendant alighted rapidly from the passenger side door, looking angry, red-faced and aggressive. After defendant had taken two steps from the van, Morrow grabbed him by the arm. He patted down defendant's outer clothing while Lambert and Walliker stood nearby. Three other officers were also on the scene. Morrow felt a bulge in defendant's clothing and asked him if he had a gun. Defendant replied "no," but that he had a gun in the van. He turned toward the van, which was about five feet away from him. Lambert reached into the van and removed a pistol from underneath a cushion on the dashboard. Defendant was then placed under arrest.

Defendant was charged with unlawful possession of a weapon under ORS 166.250, which prohibits a person from carrying "concealed upon his person or within any

vehicle which is under his control or direction any pistol, revolver, or other firearm capable of being concealed upon the person, without having a license to carry such firearm * * *."

The trial court granted defendant's motion to suppress, holding the seizure of the pistol unlawful and defendant's statements inadmissible on the grounds that the officers' stop of defendant violated ORS 131.605 to 131.625, for two reasons. First, the officers lacked a reasonable suspicion that defendant had committed a crime. Second, at the hearing, the officers failed to articulate their specific motive for stopping defendant. On appeal, defendant alleges two additional reasons in support of the trial court's decision to grant the motion. First, even if the officers could lawfully stop and frisk him, they could not search the van without a warrant. Second, the officers' detention and frisk of defendant constituted an arrest and the officers lacked probable cause to believe that defendant had committed a crime. We consider the four reasons in turn.

"A peace officer who reasonably suspects that a person has committed a crime may stop the person * * *." ORS 131.615(1). " 'Reasonably suspects' means that a peace officer holds a belief that is reasonable under the totality of the circumstances existing at the time and place he acts * * *." ORS 131.605(4). We discussed the test for a lawful stop under these statutes in *State v. Canape,* 46 Or App 453, 459, 611 P2d 1190 (1980):

"To justify a stop under the statute there must be specific articulable facts on which to base a reasonable suspicion that the subject has committed a crime. * * * The determination of reasonableness is based on an objective test. * * *" (Citations omitted.)

■ The trial court emphasized that Goff did not inform the officers of the type of gun defendant carried and that, if the gun was a rifle, defendant would not have violated ORS 166.250. To this we add that Goff did not say that the gun would be concealed. Nevertheless, the officers testified to specific articulable facts from which, under all the circumstances, they could form a reasonable suspicion that defendant had violated ORS 166.250. From Goff's

statements, the officers had reason to believe defendant would arrive with a gun. When he arrived, the officers had a reasonable suspicion that he had a gun concealed either on his person or in the van. Therefore, the stop and frisk was justified under ORS 131.615(1). Further, the officers observed defendant's aggressive driving, rapid getting out of the van and hostile demeanor. Under these circumstances, the officers' split-second decision to restrain defendant physically was not only lawful, but their failure to stop him would have been foolhardy.

■     Our decision here is supported by *State v. Lawson,* 37 Or App 739, 588 P2d 110 (1978). In *Lawson,* the defendant was convicted of carrying a concealed weapon, in violation of ORS 166.240. Police officers responded to a call that one Smith had brandished a gun in a restaurant. Fifteen minutes later, Smith and the defendant returned to the restaurant. After witnesses identified Smith, the officers searched him and the defendant, finding a gun in the defendant's purse. Upholding the trial court's denial of the defendant's motion to suppress the gun, we said:

> "* * * On the basis of these facts it would be illogical for the officers to conclude that Smith had returned *without* the gun. The officers therefore had probable cause to believe that either Smith or his companion had the weapon." (Emphasis in original.) 37 Or App at 742.

The facts here are analogous to the *Lawson* facts, and the standard for *stopping* an individual is less than probable cause, *State v. Valdez,* 277 Or 621, 628, 561 P2d 1006 (1977). The officers here clearly had a basis for a reasonable suspicion that defendant had a concealed weapon on his person.

The trial court relied on *State v. Henry,* 55 Or App 503, 638 P2d 1167 (1981), *rev den* 292 Or 863 (1982), for the proposition that, at the suppression hearing, the officers were required to articulate their precise subjective motive for the stop. The trial court said:

> "[The officers] weren't specifically asked the reason for the stop. I mean, 'what was in your mind when you stopped him; what did you think?' That has to be in the record."

The trial court read *Henry* too narrowly. In *Henry,* police officers indicated at a suppression hearing that they

stopped the defendant because they believed he had committed burglary or had stripped a vehicle. They did not indicate that they had stopped the defendant because of a traffic violation they had observed. We rejected the state's argument that the traffic violation justified the stop.

"The 'objective test' applies to the facts actually relied upon by the officer making the stop. The test is not applied to the entirety of facts that the officer could have or should have observed and chose not or failed to rely upon. * * * The trial court properly disregarded the possible traffic infraction as the justification for the stop; the officer himself did not rely on it." 55 Or App at 507.

We did not hold that an officer must testify to his precise motive for a stop. Here, the officers testified to specific, objective facts that make it clear that they stopped defendant because of their reasonable suspicion that he had a gun concealed on his person. That is all the law requires.

Defendant argues that, even if the stop and frisk of his person was lawful, the officers' search of the van exceeded the scope of a "frisk," permitted by *Terry v. Ohio,* 392 US 1, 88 S Ct 1868, 20 L Ed 2d 899 (1968), and ORS 131.625. We rejected an identical argument under similar facts in *State v. McGregor,* 57 Or App 78, 634 P2d 1315 (1982). In *McGregor,* the police stopped the defendant for questioning because they suspected that he had committed armed robbery. The officers ordered the defendant out of the car and had him place his hands atop the car, near the driver's door. The officers searched under the seats and found a gun. We applied the following test:

" 'If the reasonable needs of protection require the officer to enter constitutionally protected areas, such as a vehicle, the inquiry is the reasonableness under all the circumstances of the intrusion.' " 57 Or App at 82 (quoting *State v. Miller,* 45 Or App 407, 411, 608 P2d 595, *rev den* 289 Or 275 (1980)).

We held that, because the officers had reason to believe that the defendant had a gun in the car, and because of the defendant's proximity to the car, the officers' search under the seats was reasonable for their protection.

The facts here are at least as compelling as those in *McGregor.* Defendant was stopped five feet from his van

and was hostile. The officer who frisked him felt a bulge under his outer clothing. He asked defendant if he had a gun. Defendant replied that his gun was in the van on the dashboard. He turned toward the van to point out or retrieve the gun. Although three officers were surrounding defendant at the time, he was acting in a hostile manner and was only a step or two away from the open door of the van that the officers then knew contained the gun. Under these circumstances, Lambert's act of reaching into the van to get the gun was a reasonable intrusion to protect the officers and bystanders.

■ Finally, defendant contends that the evidence must be suppressed because the officers' acts of physically detaining and frisking him constituted an arrest without probable cause. We disagree for the same reasons we rejected an identical argument in *State v. Miller,* 54 Or App 323, 327-28, 634 P2d 1361 (1981), *rev den* 292 Or 450 (1982):

> "* * * [The officers'] original contact with defendant constituted a stop. ORS 131.605(5). Because of the nature of the crime of which defendant was suspected, [they were] entitled at that point to frisk defendant for weapons. ORS 131.625(1). Unlike the situation in *State v. Groda,* 285 Or 321, 591 P2d 1354 (1979), cited by defendant, [he officers] had not searched defendant's person. In *Groda* the court determined that an arrest had occurred precisely because a search of defendant had been conducted which could only be justified as a search incident to arrest. 285 Or at 325-26. * * *"

As we have said, what was done here was permissible, because the officers had a well-warranted suspicion that defendant was violating ORS 166.250 by carrying a concealed weapon on his person or in the van. Probable cause was not required under the facts of this case to frisk defendant or to search the van for the protection of themselves and others.

Reversed and remanded for trial.