Argued and submitted January 27, 1984, resubmitted In Banc March 6, A27008 reversed and remanded; A28698 reversed; A28773 affirmed April 10, 1985

## STATE OF OREGON,
*Respondent,*

*v.*

## JACK EDWARD GRAVES,
*Appellant.*

(C82-08-36785, C83-03-31357, C82-08-36786;
CA A27008 (Control), A28773, A28698)
(Cases Consolidated)

697 P2d 1384

David K. Allen, Portland, argued the cause and filed the brief for appellant.

Robert E. Barton, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Dave Frohnmayer, Attorney General, and James E. Mountain, Jr., Solicitor General, Salem.

ROSSMAN, J.

Buttler, J., concurring in part; dissenting in part.

Warren, J., concurring in part; dissenting in part.

### ROSSMAN, J.

This consolidated appeal involves two judgments of conviction and an order revoking defendant's probation on the first conviction by virtue of the second.

Defendant's first conviction (A27008) was for delivery of a controlled substance, ORS 475.992(2)(a), in January, 1983, for which he was placed on probation. He assigns error to the trial court's refusal to give his requested jury instruction regarding the gratuitous delivery of marijuana. ORS 475.992(2)(b). His second conviction (A28773) in June, 1983, was for possession of a controlled substance. On appeal from that conviction, he contends that the court erred in refusing to grant his motion to suppress the evidence which formed the basis of that charge. Finally, he appeals (A28698) from an order which revoked his probation on the first conviction due to his involvement in the episode giving rise to the second conviction.[1] Because we agree that defendant is entitled to a new trial in A27008, the conviction for which the probation was imposed, the order revoking that probation is necessarily reversed. We do not agree, however, that defendant's motion to suppress should have been granted. Accordingly, we reverse and remand the conviction in A27008, reverse the order revoking defendant's probation in A28698 and affirm the conviction in A28773.

On August 14, 1982, two police officers were patrolling the Portland Transit Mall when they observed defendant and another person, Wilson, conversing. Wilson handed defendant a bill, which defendant placed in his pocket. Defendant handed something back to Wilson and also passed him a bill. As the officers approached, they saw that Wilson was holding what appeared to be a marijuana cigarette. Defendant was arrested and subsequently charged by information as follows:

> "* * * The said defendant * * * did unlawfully and knowingly deliver a controlled substance in Schedule I, to-wit: marijuana, for consideration * * *."

At trial, defendant admitted having possessed the marijuana

---

[1] There are separate, timely notices of appeal from the two judgments of conviction and from the order revoking probation. The three appeals were consolidated.

but stated that he handed the cigarette to Wilson to light and that they had both intended to smoke it. Defendant was convicted as charged.

On appeal, he contends that, because the marijuana cigarette which he delivered weighed less than five grams,[2] and because there was evidence that no money changed hands, the court should have given his requested jury instruction regarding the gratuitous delivery of marijuana, ORS 475.992(2)(b), which he contends is a lesser included offense of delivery of marijuana for consideration.

■ A defendant is entitled to lesser included offense instructions in two situations: (1) when the lesser crimes are necessarily included within the statutory definition of the greater crime or (2) when the accusatory instrument expressly includes lesser crimes. The party seeking the instruction must also show that there is evidence from which it can be found that he is guilty of the lesser but not of the greater offense. *State v. Washington*, 273 Or 829, 836, 543 P2d 1058 (1975).

ORS 475.992(2) provides:

"Notwithstanding the placement of marijuana in a schedule of controlled substances under ORS 475.005 to 475.285:

"(a) Any person who delivers marijuana for consideration is guilty of a Class B felony.

"(b) Any person who delivers, for no consideration, less than one avoirdupois ounce of the dried leaves, stems and flowers of the plant Cannabis family Moraceae is guilty of a Class A misdemeanor, except that *any person who delivers, for no consideration, less than five grams of the dried leaves, stems and flowers of the plant Cannabis family Moraceae is guilty of a violation, punishable by a fine of not more than $100.*" (Emphasis supplied.)

Defendant was charged and convicted under subparagraph (a). The instruction he requested related to the emphasized part of subparagraph (b). The intermediate offense defined in the first part of subparagraph (b) is not relevant here, because the marijuana cigarette in this case weighed less than five grams.

---

[2] Crime lab reports, which were received in evidence, showed that the marijuana cigarette handed to Wilson by defendant weighed less than one gram.

To resolve this issue, we must compare the statutory definitions of the two offenses and determine whether the violation of gratuitous delivery of marijuana is necessarily included in the statutory definition of the crime of delivery of marijuana for consideration. The elements of the greater offense are (1) delivery (2) of marijuana (3) for consideration. The lesser offense is a carbon copy of the greater, except that the state need not prove consideration and the amount delivered must be less than five grams. Thus, aside from the limitation on quantity,[3] the essential difference between the two offenses is that ORS 475.992(2)(a) requires consideration, whereas ORS 475.992(2)(b) does not.

An argument can be made that this difference is crucial, *i.e.,* if the *lack* of consideration is considered an element of ORS 475.992(2)(b), which must be pleaded and proven separately, then the two offenses would be mutually exclusive. By proving consideration, one would necessarily have disproven a lack thereof, so the delivery could not have been gratuitous. Were that the case, ORS 475.992(2)(b) could not be a lesser included offense in ORS 475.992(2)(a), and defendant would not have been entitled to his requested instruction.

However, that is not the case here. The state is not, when prosecuting gratuitous delivery of marijuana violations, required affirmatively to prove a negative, *i.e.,* the lack of consideration. It must prove only a delivery of less than five grams of marijuana. In a case like this one, where the defendant has been charged with delivery for consideration, if the

---

[3] It should be noted that ORS 475.992(2)(b) is more specific as to the marijuana that is delivered in that it refers specifically to "leaves, stems and flowers," while ORS 475.992(2)(a) uses the statutory definition of marijuana from ORS 475.005(15):

"* * * [A]ll parts of the plant Cannabis family Moraceae, whether growing or not; the resin extracted from any part of the plant; and every compound, manufacture, salt, derivative, mixture, or preparation of the plant or its resin. It does not include the mature stalks of the plant, fiber produced from the stalks, oil or cake made from the seed of the plant, any other compound, manufacture, salt, derivative, mixture, or preparation of the mature stalks (except the resin extracted therefrom), fiber, oil, or cake, or the sterilized seed of the plant which is incapable of germination."

Similarly, the quantities in ORS 475.992(2)(b) are limited to small amounts, whereas there is no limit in ORS 475.992(2)(a). Those differences do not make the statutory definitions inconsistent. The more general definitions of ORS 475.992(2)(a) clearly include the more specific ones of (2)(b). However, the evidence adduced in a given case could preclude simultaneous charges under both statutes.

state fails to prove the element of consideration, the delivery necessarily becomes one "for no consideration." At that point, proof of no consideration would be redundant. The reference in ORS 475.992(2)(b) to a lack of consideration merely serves to highlight the difference between it and ORS 475.992(2)(a). One requires consideration, the other does not. Therefore, ORS 475.992(2)(b) is nothing more than ORS 475.992(2)(a), minus consideration. Accordingly, the violation of gratuitous delivery of marijuana is necessarily included in the statutory definition of the felony of delivery of marijuana for consideration.

As noted, the second thing that defendant must show to be entitled to his requested instruction is that there was evidence to support the lesser charge. Defendant testified that no money changed hands. That testimony, if believed by the jury, could have defeated the state's efforts to prove consideration. Thus, one reasonably could have concluded from the evidence that the delivery was gratuitous.

Accordingly, we conclude that defendant was entitled to the lesser included offense instruction that he requested. Failure to give the instruction requires that defendant be granted a new trial.

This conclusion is strengthened by the layout of the statutes themselves. As one reads through ORS 475.992, one should note that the offenses decrease in severity (*i.e.,* selling any amount, gratuitous delivery of less than one ounce and gratuitous delivery of less than five grams.) That scheme is strong evidence that the legislature intended to define declining degrees of offenses involving the delivery of marijuana. We reverse defendant's conviction in A27008.

We turn to A28773, in which he challenges the court's failure to grant his motion to suppress in a subsequent trial for possession of marijuana. On March 22, 1983, defendant was confronted by two police officers as he was walking in the South Park Blocks area of Portland. The officers testified that, before the confrontation, they had received a radio dispatch indicating that a man who matched defendant's description was in possession of a firearm. The dispatch advised the officers that an anonymous informant had not actually seen the gun, but had heard a clicking sound emanating from the described person's pocket. On the basis of that

information, the officers stopped defendant and had him interlace his fingers behind his head while they patted him down, lifted his coat and felt in his waistband. At some point, they informed defendant of the specifics of the informant's call, and defendant acknowledged that he had been clicking something in his pocket. After the officers had satisfied themselves that there was no gun on defendant's person, one of them began to pat down the nylon shoulder bag that defendant was carrying; defendant pulled away and put his hands on the bag. The officers approached him again and began to feel the shoulder bag a second time; defendant pulled away again. Defendant was then handcuffed and was either asked whether he had a gun in the bag or what its contents were. Defendant responded that he did not have a gun and that it was "just pot." The officers removed the shoulder bag, searched it and discovered a baggie of marijuana, scales and metal weights, all of which were the subject of defendant's motion to suppress. Defendant was subsequently formally arrested, charged and convicted of possession of a controlled substance.

Defendant concedes that the initial stop and frisk of his person were lawful. He contends, however, that the trial court erred in refusing to grant his motion to suppress, because the officers' search of his shoulder bag exceeded the statutory and constitutional limits of a permissible "stop" and "frisk." We disagree.

Under ORS 131.615(1) and (3), the officers were entitled to stop defendant and to make reasonable inquiry regarding the immediate circumstances that aroused their suspicion. Under ORS 131.625(1), they were permitted to frisk defendant for weapons. By definition, a "frisk" is limited to "an external patting of a person's outer clothing." ORS 131.605(2). However, we have held that, in a *Terry*-type stop, circumstances may permit a more extensive intrusion into otherwise protected areas. *See State v. Goodman,* 63 Or App 102, 663 P2d 422, *rev den* 296 Or 56 (1983); *State v. Bowcutt,* 62 Or App 591, 661 P2d 565, *rev den* 295 Or 773 (1983); *State v. McGregor,* 57 Or App 78, 643 P2d 1315 (1982).

In *State v. Lawson,* 37 Or App 739, 588 P2d 110 (1978), police responded to a call that a party named Smith had brandished a gun in a restaurant. Shortly after the

officers' arrival, Smith and the defendant returned to the scene. Following a fruitless search of Smith, officers searched the defendant's purse and located the weapon. We upheld the search and seizure, reasoning that it would have been illogical for the officers to conclude that Smith had returned to the restaurant *without* the gun. 37 Or App at 742. The circumstances in this case are analogous to those in *Lawson.*

█      We have applied a similar rationale in cases when, as here, the police have information that a suspect is armed with a weapon but are unable to locate it through a pat down search of the person. In such instances, a search of other constitutionally protected areas beyond the immediate person of the suspect has been upheld when directed towards the reasonable needs of protecting the police. For example, in *State v. Goodman, supra,* (written by one of the judges who dissents here), we upheld the seizure of a .38 caliber revolver observed by police on the seat of the defendant's car following a lawful stop and frisk of his person for a gun. In so doing, we stated:

> "Having lawfully stopped defendant, the officers had the right to frisk him for their own protection. Because no gun was found on defendant's person, and because the officers intended to permit defendant [to] leave when the purpose of the stop was completed, they were entitled, at the least, to look through the windows of defendant's car to see if there was a gun inside. * * *" 63 Or App at 106.

Just as the officers in *Goodman* were entitled to look through the windows of the car, the officers in this case were fully justified in patting down the outside of defendant's shoulder bag to determine if it contained a gun. *See also State v. McGregor, supra.*

█      The issue, therefore, becomes whether the subsequent entry into defendant's shoulder bag was reasonable. In this connection, defendant appears to argue that his physical resistance to the pat down of his shoulder bag cannot provide additional cause for the officers to examine the bag's contents. Whether it can or cannot is irrelevant to this case because, while the officers were attempting to determine whether the shoulder bag contained a gun, but before the bag was opened, defendant voluntarily admitted that there was "just pot" inside. That admission changed the entire complexion of the case. The officers no longer needed to be motivated by a

reasonable suspicion that defendant possessed a gun. At that point, there was independent probable cause to open the bag to look for marijuana.

*Reasonableness* is the key to this type of case. The officers acted reasonably. The conclusion is inescapable that this search was occasioned by the officers' concern for the safety of themselves and others. The dissent should not fault the officers for their reasonable actions.

Judgment in A27008 reversed and remanded; order revoking probation in A28698 reversed; judgment in A28773 affirmed.

**BUTTLER, J.,** concurring in part; dissenting in part.

Although I concur in the majority's disposition of defendant's first conviction (CA A27008), I disagree with its affirmance of his second conviction (CA A28773) and therefore dissent from the disposition of that case.

The appeal from the second conviction calls upon us to determine the permissible scope and intensity of a "frisk" of a person following a stop pursuant to ORS 131.615.[1] Under that statute, the officers were entitled to stop defendant for a *reasonable* time and to make *reasonable* inquiry regarding the *immediate circumstances* that aroused their suspicion. Under ORS 131.625(1), they were permitted to frisk defendant for weapons if they reasonably suspected that he was armed and presently dangerous to them or others present. A "frisk," however, is limited by definition to "an external patting of a person's outer clothing." ORS 131.605(2). The officers testified that they had satisfied themselves that defendant had no weapon on his person after they frisked him. Having done so, their right to make reasonable inquiry into the immediate and very limited circumstances which aroused their suspicion had ended, and they had no right to detain defendant further.

The *only* basis for their suspicion was an anonymous call advising that the caller had heard a clicking noise in

---

[1] There are separate, timely notices of appeal from the two judgments of conviction and from the order revoking probation. The three appeals were consolidated.

defendant's pocket, by virtue of which the caller had concluded that defendant must have had a gun in his pocket. Once the officers had determined that defendant did not have a gun on his person, "the immediate circumstances that aroused the officer's suspicion," ORS 131.615(3), had dissipated, and any further inquiry, by definition, was unreasonable. The officers should have gone on their way and let defendant go on his.

The "stop" statute was enacted in Oregon following the United States Supreme Court's decision in *Terry v. Ohio,* 372 US 1, 88 S Ct 1868, 20 L Ed 2d 889 (1968), but is more limited in its application than is the *Terry* rule. At best, permitting the temporary seizure of a person without probable cause is an accommodation between a person's right to be secure in his or her person, papers and effects (Or Const, Art I, § 9; US Const, Amend IV) and the government's right to investigate crimes. That accommodation involves a delicate balance, and the courts should insist on strict adherence to the statutory circumscriptions in fulfilling their duty to act as arbiters between private citizens and the police. We have held, in very limited circumstances when the police had good cause to believe that a stopped person was armed and dangerous, that a more extensive intrusion into otherwise protected areas may be permitted for the protection of the officers. *See State v. Goodman,* 63 Or App 102, 663 P2d 422, *rev den* 296 Or 56 (1983); *State v. Bowcutt,* 62 Or App 591, 661 P2d 565, *rev den* 295 Or 773 (1983); *State v. McGregor,* 57 Or App 78, 634 P2d 1315 (1982). In those cases, the "immediate circumstances" giving rise to the officers' suspicion were substantially more significant than here. It cannot be said that the officers reasonably believed that defendant was armed and dangerous just because someone had said that he had heard a clicking noise emanating from defendant's pocket.

The majority would hold that, even though the officers did not have authority to arrest defendant at the time he was stopped, their authority to search incident to the stop exceeded the authority they would have had incident to an arrest. We have consistently held that when a search incident to arrest reaches a logical stopping point, the police must seek a warrant before proceeding further. *State v. Ridderbush,* 71 Or App 418, 692 P2d 667 (1984); *State v. Kirsch,* 69 Or App 418, 686 P2d 446, *rev den* 298 Or 151 (1984); *State v. Flores,* 68 Or App 617, 685 P2d 999, *rev den* 298 Or 151 (1984). The

logical stopping place here was when the officers had satisfied themselves that the clicking noise in defendant's pocket was not a gun. Had they permitted defendant to leave at that point, he would not have attempted to assert his right to be free of the officers' unauthorized attempt to search his duffel bag, and the inquiry would have ended, *see State v. Gressel,* 276 Or 333, 554 P2d 1014 (1976), as it should have.

The evidence should have been suppressed. Accordingly, I dissent.

Warden and Newman, JJ., join in this opinion.

**WARREN, J.,** concurring in part; dissenting in part.

I agree with the majority that defendant's motion to suppress was properly denied and that his conviction in CA A28773 should be affirmed. I disagree, however, that his conviction in CA A27008 for delivery of a controlled substance must be reversed for failure to give an instruction on gratuitous delivery under ORS 475.992(2)(b).

As the majority points out, the charge against defendant was that he "* * * did unlawfully and knowingly deliver a controlled substance in Schedule I to-wit: marijuana, for consideration * * *." Accordingly, the pleadings do not give notice of the intent by the prosecution to seek conviction for gratuitous delivery. Therefore, the test to determine whether this defendant was entitled to an instruction on a lesser included offense is whether the lesser crime is necessarily included within the statutory definition of the greater crime. In other words, in proving the elements of the greater crime, the state would necessarily have to prove the lesser crime. *State v. Washington,* 273 Or 829, 836, 543 P2d 1058 (1975). Given that test, it is clear that a violation of ORS 475.992(2)(b) is not a lesser included offense of ORS 475.992(2)(a). That is so, because proof that consideration was paid necessarily precludes a conviction of a violation for delivery for no consideration.

As the Supreme Court noted in *State v. Washington, supra,* 273 Or at 836:

> "Historically, the lesser included offense doctrine originated as a rule which was developed to assist the prosecution

in obtaining a conviction when the evidence produced at trial was insufficient as to one or more elements of the offense actually charged in the indictment. * * *"

Unless the test in *Washington* is changed and something like the quoted material is adopted as the test, gratuitous delivery is not a lesser included offense.

This result may be required as a consequence of legislative inadvertence, but it nevertheless is required. Because delivery for no consideration is not a lesser included offense, defendant was not entitled to the instruction he requested. If the jury had believed him, he was entitled to be acquitted of the crime charged. I would affirm both convictions.

Van Hoomissen, J., joins in this opinion.